[No 14374. In Bank. — March 25, 1892.]

# WILLIAM P. HARRIS ET AL., RESPONDENTS, v. A. HARRISON ET AL., APPELLANTS.

QUIETING TITLE — WATERCOURSE — APPEAL — REVIEW OF CONFLICTING EVIDENCE. — In an action to quiet title to the use of water alleged to flow as a natural watercourse through a cañon past defendants' land, and upon the land of plaintiffs, where the evidence is conflicting as to the existence of such natural watercourse, a finding in favor of the plaintiffs will not be disturbed upon appeal.

ID. — EVIDENCE — AMOUNT OF WATER IN STREAM — COMPARISON OF OTHER STREAMS — REMOTE PROOF. — In such action, a witness who has testified that he had measured the water in the stream in question, at a specified time, and also the water of other streams, and given the results of his measurement of the stream in controversy, cannot be properly asked as to the comparative amount of water in the other streams at points not stated, whose measurement, length, or water-sheds are not specified, as compared with the amount of water in them in preceding years, for the purpose of showing that there was more than the average amount of water in the stream in question at the time of the measurement, the evidence being too general and remote to be competent for that purpose.

ID. — PLEADING — RIPARIAN OWNERSHIP — APPROPRIATION — DIVERSION FOR IRRIGATION — SURPLUSAGE. — Where a complaint in an action to quiet title to the waters of a stream shows that the plaintiffs were the owners of certain land to and upon which the stream of water in question naturally flowed, and that by virtue of their riparian ownership of the land they were entitled to have the use of the water in the stream upon the land, the complaint sufficiently shows the riparian right of the plaintiffs, and the fact that it also alleges that the plaintiffs have the right to divert from its natural channel, and to use for irrigating and domestic purposes, all the waters of the stream, does not restrict the plaintiffs to proof of a right acquired by appropriation, but such latter allegations may be treated as surplusage, so far as the statement of the cause of action is concerned, and do not vitiate the complaint.

ID. — RIPARIAN RIGHTS — MODIFICATION OF COMMON LAW — IRRIGATION. — The common-law rules as to riparian rights are so far modified in this state that an upper riparian proprietor has the right to the reasonable use of the water of a natural stream for irrigating the riparian land, where irrigation is necessary, although such use may appreciably diminish the flow down to the lower riparian proprietor; but he does not have the right to absorb all the water of the stream, so as to allow none to flow down to the lower riparian proprietor.

ID. — REASONABLE USE — QUESTION OF FACT. — The question as to what is a reasonable use of the water of a natural stream for irrigating the land of a riparian proprietor is a question of fact, depending upon the circumstances appearing in each particular case.

ID. — DIVISION OF WATER FOR IRRIGATION — ALTERNATION OF FLOW — SUPPORT OF JUDGMENT. — In an action to quiet title to a stream of water claimed by one riparian proprietor as against another, no other

rights being involved, where the evidence shows that the amount of water in the stream is so small that the upper riparian proprietor cannot use it for any useful irrigation without practically absorbing it all, and leaving none to flow down to the land of the lower riparian proprietor, and the evidence is sufficient to warrant the court in finding that in order to irrigate it is necessary that the full flow of the stream be used at once, a decree apportioning equally between the parties the use of the full flow of the stream during alternate periods of time is not erroneous, and is supported by pleadings setting up the rights of the parties to irrigate their respective lands by the use of the water in controversy.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Willis, Cole & Craig,* for Appellants.

*Barclay & Wilson,* for Respondents.

McFARLAND, J. — This action was brought to quiet plaintiffs' title to the right to the use of certain water, alleged to flow naturally through a stream called Harrison Cañon. Judgment was rendered for plaintiffs, and defendants appeal.

Plaintiffs and defendants are the owners of adjoining land, — defendants' land lying on Harrison Cañon above and to the north of the land of plaintiffs. The real merits of the case — underlying incidental points of pleading and practice — rest upon the issue whether or not there is any watercourse in Harrison Cañon. Defendants undertook to maintain by their evidence that the general character of Harrison Cañon was that of a dry, sandy gulch, with practically no running water in it, except during great and unusual rain-storms, when temporary torrents bring down large masses of sand and *débris*, which fill up the gulch, and so change it that it could not be said to have any well-defined bed or banks; that ordinarily there was no water in the cañon except a little that oozed out of two springs on defendants' land, in quantities too small to form a current strong enough to flow down to plaintiffs' land; and that de-

fendants, by digging into said springs, and removing obstructions, developed a small stream, which they use to irrigate their land. Plaintiffs introduced evidence tending to show the contrary of defendants' contention, and tending to prove that there always has been, and is, a natural stream of water running down said cañon to and upon plaintiffs' land, independent of said unusu l storms. The judge of the court, with counsel for both parties, and a civil engineer (Finkle), visited the premises, and observed the various points alluded to in the testimony. The evidence was certainly very conflicting; and without reviewing it here in detail, it is sufficient to say that its character is such that the finding of the lower court that there was a watercourse as claimed by plaintiffs must be taken as final.

1. We do not think that the court erred in sustaining the objections to two certain questions asked by appellants of the witness Finkle. The witness had testified that he had measured the water in Harrison Cañon when he visited it with the judge of the court, as above stated, and had given the result of his measurement; and appellants' counsel then asked him this question: "What, if any, comparison does a flow of water out of *streams or springs* bear this year to that of the preceding year?" And the witness, having stated that he had "this year" also measured certain other named streams coming from the mountains into the San Bernardino Valley, was then asked this question: "Now, then, what, if any, is the increase or decrease of any of the streams that you have mentioned, — City Creek, Plunge Creek, or the other streams you have mentioned, on the north side of the San Bernardino range, — this year as compared with the preceding years?" Objections to these two questions were sustained, and, we think, correctly. Appellants had the right to show, if they could by appropriate evidence, that there was more than the average amount of water in Harrison Cañon at the time Finkle measured it. This they might have done by the direct testimony of witnesses who knew the fact, if there were such, or by

proof of such circumstances, as an unusual rainfall that year at the place, etc. But the comparative amount of water in other streams at points not stated in a range of mountains, nothing being shown as to their length, watersheds, etc., is too general and remote to be proper evidence of the fact sought to be proven.

2. There is some foundation for appellants' criticism of the complaint; but we think it must be held as sufficient, at least, in the absence of a special demurrer. The averments are not as direct, and are not as well connected in logical sequence, as they should have been; but it sufficiently appears therefrom that plaintiffs were the owners of certain land; that there was a stream of water naturally flowing to and upon said land; and that by their riparian ownership of the land they were entitled to have the use of said water upon said land. ·We do not think that — as contended by appellants — the complaint merely declares on a right acquired by appropriation. The complaint contains this language: " Also the right to divert from its natural channel, and to use for irrigating and domestic purposes, all the waters of that certain stream," etc. So far as the sufficiency of the statement of the cause of action is concerned, the use of the words " right to divert " and " for irrigation " are unnecessary. If plaintiffs, by virtue of their ownership of the land, had the right to have the natural flow of the water, they, of course, had the right to divert and use it for irrigating their land, at least, as against the defendants, who were upper riparian proprietors; but the use of these words does not vitiate the statement of the cause of action. So far as this point is involved, they may be treated as surplusage, although some importance may, perhaps, be attached to them when considering the relative rights of the two sets of riparian proprietors to the use of the water of the stream for irrigating their respective lands.

3. The most important question of law involved in the case (although not much argued in the briefs) arises out of the form of the judgment. The court found " that

in order that the water of said stream may be made available for the purposes of irrigation to advantage, it is necessary that the full flow of the stream be used at once "; and it was decreed in the judgment that plaintiffs are the owners of and entitled to the full flow of the water every three and a half days out of every seven days, and that defendants are entitled to such flow for three and a half days out of every seven, and plaintiffs' title to such flow is quieted. Appellants contend that the above finding and the judgment are outside of the issues made by the pleadings.

Plaintiffs alleged in their complaint that they were entitled to the flow of "all the waters" flowing in Harrison Cañon; and defendants, in their answer, denied that plaintiffs were entitled to the flow of any of said waters. The court found and decreed, substantially, that plaintiffs were entitled to the flow of some of said waters, but not of all, and that their right to have the waters of said creek flow down to and upon their land was subject to the use of said waters by defendants as upper riparian proprietors. Now, a plaintiff in an action to quiet title, or in an action of ejectment, does not lose his case by a failure to establish his title to the whole of the property described in his complaint; he may recover — upon sufficient proof — either a segregated part of the premises sued for, or an undivided interest therein. And so if the judgment in the case at bar had been for a certain part of the continuous flow of the stream, — as, for instance, one half thereof, or a certain number of inches, — there could have been no objection to its form. In that event, plaintiff would have simply recovered, in the ordinary way, a part of the property for which he sued. But could the court apportion the use of the water between the parties, as was attempted to be done by the judgment?

According to the common-law doctrine of riparian ownership as generally declared in England and in most of the American states, upon the facts in the case at bar the plaintiffs would be entitled to have the waters of

Harrison Cañon continue to flow to and upon their land as they were naturally accustomed to flow, without any substantial deterioration in quality or diminution in quantity. But in some of the western and southwestern states and territories, where the year is divided into one wet and one dry season, and irrigation is necessary to successful cultivation of the soil, the doctrine of riparian ownership has by judicial decision been modified, or rather enlarged, so as to include the reasonable use of natural water for irrigating the riparian land, although such use may appreciably diminish the flow down to the lower riparian proprietor. And this must be taken to be the established rule in California, at least, where irrigation is thus necessary. (*Lux* v. *Haggin*, 69 Cal. 394.) Of course there will be great difficulty in many cases to determine what is such reasonable use; and "what is such reasonable use is a question of fact, and depends upon the circumstances appearing in each particular case." (*Lux* v. *Haggin*, 69 Cal. 394.) The larger the number of riparian proprietors whose rights are involved, the greater will be the difficulty of adjustment. In such a case, the length of the stream, the volume of water in it, the extent of each ownership along the banks, the character of the soil owned by each contestant, the area sought to be irrigated by each, — all these, and many other considerations, must enter into the solution of the problem; but one principle is surely established, namely, that no proprietor can absorb all the water of the stream so as to allow none to flow down to his neighbor.

In the case at bar, only the rights of two riparian proprietors are to be considered; none other are involved. And the amount of water in the stream is so small that it is apparent that defendants could not use it for any useful irrigation without practically absorbing it all, and leaving none to flow down to plaintiffs' land. There was sufficient evidence to warrant the finding of the court, that in order to irrigate "it is necessary that the full flow of the stream be used at once." But defendants, as

well as plaintiffs, were entitled to a reasonable use of the water for irrigation; and the rights of neither could be declared or preserved by an attempted division of the flow of the water without reference to time. The only way, therefore, to preserve those rights, and to render them beneficial, was to decree to the parties the use of the full flow of the stream during alternate periods of time; and we do not see why the court could not decree a division of the use of the water according to that method, when there was no other method by which it could be done. And that the division was a just one, and not erroneously determined upon, seems clear. The evidence showed that the arable and irrigable land of each party was about equal in area; and there is no contention that the division was not equitable, provided that all the other facts were correctly found by the court.

We see no difficulty in the point that the pleadings do not support the judgment. We see no reason why a court of equity, in a case like this, could not decree such an adjustment of disputed water rights as was decreed in this case upon the ordinary pleadings in an action to quiet title. Under such pleadings, the rights of the parties to and in the property involved are at issue, and the court has jurisdiction to definitely and finally determine them. The pleadings in this case, however, set up the rights of the parties to irrigate their respective lands by the use of the water right in litigation, and it is difficult to see what further pleadings were necessary.

There was some contradictory evidence as to whether plaintiffs' ditch or flume extends upon the land of defendants, and there is something on that subject in the briefs; but it is sufficient to say, on this point, that the judgment does not give plaintiffs any right to maintain a ditch on defendants' land, or to go on it for any purpose.

Judgment and order affirmed.

DE HAVEN, J., SHARPSTEIN, J., PATERSON, J., HARRISON, J., and GAROUTTE, J., concurred.