[L. A. No. 1192.   Department Two.—February 23, 1904.]

ANDERSON ROSE et al., Respondents, v. LOUIS MESMER et al., Respondents; JOSÉ ANTONIO MACHADO et al., Appellants.

WATER-RIGHTS—ACTION TO DETERMINE RIGHTS—DECREE IN PARTITION—ADVERSE USER—FINDINGS—CONFLICTING EVIDENCE.—Where a decree in partition divided the land in reference to water-rights from a creek into first-class irrigable land, land susceptible of cultivation without irrigation, pasture land, and tide, swamp, and sandhill land, and attached the right to all of the waters of the creek so far as needed to the first-class land, in a subsequent action to determine the rights of all the parties to the waters of the creek a finding that the owner of the pasture land had acquired no title by adverse user to any of the waters of the creek as against the owner of the

first-class land will not be disturbed where the evidence is conflicting and there is sufficient evidence to sustain the finding.

ID.—EFFECT OF PARTITION DECREE — RIPARIAN RIGHTS.— Where the original owners of the ranch held riparian rights in the creek extending to the entire area of the ranch, the effect of the decree in partition among many subsequent owners was to detach the riparian right from part of the land and to cut off such part from participation in the riparian rights and to give the owners of the first-class land a preference in their use, but did not change the character of the water from a riparian right to a right appurtenant, notwithstanding many of the allotments of first-class lands did not abut upon the stream.

ID.—RIPARIAN RIGHTS PARCEL OF LAND—SEVERANCE OF UNITY OF POSSESSION—PLEADING.—The riparian rights attached to the land partitioned were in strict technical language "parcel of the land." It was not necessary that the complaint in partition should describe the waters of the creek. The judgment in partition merely severed the unity of possession and community of interest, and did not in any other respect affect the character of the title, unless expressly so declared.

ID.—RIGHTS IN COMMON—HOSTILITY NOT PRESUMED.—Where the decree in partition did not assume to apportion the water between the owners of the first-class land, nor designate the time or manner of its use, their rights were in common, and the use by the owner of a proportional right cannot be presumed hostile to the common right.

ID.—DIVISION BY DITCHES—PRESCRIPTIVE RIGHT NOT ACQUIRED.—Where the water was divided by the owners of the common right by means of several ditches, with headgates or dams located at different places, and was divided upon the plan of giving to each owner the use of all the water of the ditch leading to his tract, for a certain fixed period, and an upper ditch was used by owners of first-class lands so located that water therefrom could also be used on their pasture land when there was sufficient water, and was so used without any continuous and uninterrupted adverse user as against other owners of first-class lands, no prescriptive right was thereby acquired for user on pasture lands as against the owners of other first-class lands.

ID.—GRANT OF RIGHT BY UPPER OWNER—USE OF UPPER DITCH.—A grant of a right by an upper owner of another ranch to owners of the common riparian right to take out water of the creek and conduct it over his land by means of an existing upper ditch to first-class lands below and pasture lands is not inconsistent with the theory that the grantees were intending by that means to exercise their common rights as riparian owners.

ID.—LIMIT OF USE—USE OF SURPLUS—ADVERSE USER.—Where there was a general understanding and consent by all of the owners of the waters of the creek that any part of the water could be diverted and

used by any one when not required by the others, and where there
was a surplus it could be used upon other than first-class lands, the
user of surplus water on pasture lands cannot be deemed adverse to
owners of first-class lands. The riparian owners of the first-class
lands were limited by the general understanding and custom to so
much of the water as should be reasonably necessary for the irri-
gation of their lands.

Id.—Appeal from New Trial Order—Judgment and Conclusion of
Law not Considered.—Upon an appeal from a new trial order
the appellants cannot complain of any alleged error in the judgment
in enjoining them from any use of water in the upper ditch as
against the owners of the first-class lands, nor of a conclusion of
law that they have a right to enter upon the lands of other owners
to secure their rights to the water.

Id.—Findings in Separate Volumes.—The fact that the findings appear
in separate volumes, only one of which is signed by the judge, where
they appear to be one continuous document, and each volume is
identified by the signature of the clerk, cannot be characterized as
error.

Id.—Adverse User of Surplus as against Second-class Lands—New
Trial.—Where a finding that the owners of second-class lands are
superior to those of the third-class or pasture lands, as respects
surplus water, is not wholly sustained by the evidence, a new trial
should be granted to determine that question only.

APPEAL from an order of the Superior Court of Los An-
geles County denying a motion for new trial. M. T. Allen,
Judge.

The facts are stated in the opinion of the court.

Lee & Scott, and Graves, O'Melveny & Shankland, for Ap-
pellants.

The deed from Higuerra was color of title that laid the
foundation for adverse user on pasture lands. (Code Civ.
Proc., sec. 322; *Specht* v. *Hagar*, 65 Cal. 443; *Wilson* v.
*Atkinson*, 77 Cal. 485;[1] *Webber* v. *Clarke*, 74 Cal. 11; *Kocke-
mann* v. *Bickel*, 92 Cal. 665; *Millett* v. *Lagomarsino*, 107 Cal.
103; *Packard* v. *Moss*, 68 Cal. 123; *Unger* v. *Mooney*, 63 Cal.
586.) An adverse user was sufficiently shown. (1 Am. &
Eng. Ency. of Law, 2d ed., 850, 867, 868, 890; Washburn on
Easements, 4th ed., 156, p. *90; Jones on Easements, secs.
158-163; Black's Pomeroy's Water Rights, sec. 133; *Hesperia
etc. Co.* v. *Rogers*, 83 Cal. 10;[2] *Stanton* v. *French*, 83 Cal.

---

[1] 11 Am. St. Rep. 299.          [2] 17 Am. St. Rep. 209.

196; *Davis* v. *Gale,* 32 Cal. 26;[1] *Yankee etc. Water Co.* v. *Crary,* 25 Cal. 504.[2])

Clarence A. Miller, M. J. McGarry, Joseph L. Murphy, J. Wiseman MacDonald, and R. H. F. Variel, for various Respondents.

The partition decree was conclusive, as to the riparian rights as parcel of the lands, in the order of the classes fixed thereby. (Freeman on Judgments, 3d ed., sec. 304; *Hancock* v. *Lopez,* 53 Cal. 362; *Jameson* v. *Hayward,* 106 Cal. 682; *Edison* v. *Marcell,* 12 Allen, 600.) The burden of proof was on the party claiming the prescriptive right to show an uninterrupted adverse user. (*American Co.* v. *Bradford,* 27 Cal. 361; *Lux* v. *Haggin,* 69 Cal. 358; *Stanford* v. *Felt,* 71 Cal. 250; *Alta Co.* v. *Hancock,* 85 Cal. 226;[3] *De Frieze* v. *Quint,* 94 Cal. 663;[4] *Ball* v. *Kehl,* 95 Cal. 613; *Faulkner* v. *Rondoni,* 104 Cal. 140, 141.) User of surplus water created no estoppel, and gave no right of action. (*Last Chance Ditch Co.* v. *Heilbron,* 86 Cal. 20; *Anaheim* v. *Semi-Tropic Co.,* 64 Cal. 185; *Grigsby* v. *Water Co.,* 40 Cal. 396; *Lakeside Ditch Co.* v. *Crane,* 80 Cal. 183; *Faulkner* v. *Rondoni,* 104 Cal. 146; *Hargrave* v. *Cook,* 108 Cal. 78, 79; *Modoc etc. Co.* v. *Booth,* 102 Cal. 156, 157.) Any interruption, however slight, will defeat a claim of prescription. (*Ball* v. *Kehl,* 95 Cal. 613; *Cave* v. *Crafts,* 53 Cal. 135; *Bree* v. *Wheeler,* 129 Cal. 147; *Last Chance Ditch Co.* v. *Heilbron,* 86 Cal. 12; 1 Am. & Eng. Ency. of Law, 2d ed., p. 837; Kinney on Irrigation, sec. 275.)

SHAW, J.—This is an appeal by seventeen defendants from an order denying their motion for a new trial. It is claimed that the findings are in many particulars unsupported by the evidence. The parties are very numerous and the issues exceedingly complicated, so that it is impossible without unduly extending this opinion to give anything like a complete statement of the various features of the case.

The object of the suit was to determine the respective rights of all the parties to the waters of Ballona Creek, in Los Angeles County, and to enjoin certain defendants from using more of the water than their just proportion. The plain-

---

[1] 91 Am. Dec. 354.       [3] 20 Am. St. Rep. 217.
[2] 85 Am. Dec. 145.       [4] 28 Am. St. Rep. 151, and note.

tiffs and certain of the defendants, including those who appeal, each owned parcels of land which are a part of a Mexican grant known as Rancho la Ballona. This ranch contains about fourteen thousand acres of land bordering on the Pacific Ocean, and extending from the ocean up the creek on each side thereof for a distance of several miles. The other parties own land farther up the creek, and abutting thereon, or on affluents thereof, and comprising Mexican land grants known respectively as "Rincon de los Bueyes," "Las Cienegas," and "La Cienega ó Paso de la Tijera," the Los Bueyes being next above La Ballona, and the other two adjoining Los Bueyes, and farther up the stream. The controversy on this appeal is in regard to the right of those parties only who own portions of Rancho la Ballona. In the year 1863 an action entitled Young et al. *v*. Machado et al., for the partition of the Ballona ranch, was begun in the district court of Los Angeles County. At and before that time certain persons owning undivided interests in the Ballona ranch, and having possession of separate parcels thereof, had made a dam in the creek at a point on the Los Bueyes ranch above the line of the Ballona ranch, and had built a ditch leading from the dam to the tracts in their possession, by means whereof they conducted the water of the creek from the dam to the land they occupied in the Ballona ranch. These persons were the predecessors in interest of the appellants herein. The final decree in the partition suit was made in 1868. In the mean time, on November 7, 1867, these predecessors of appellants obtained from Francisco Higuerra, then the owner of the Los Bueyes ranch, a deed granting the right to take out water on his land and conduct it over his land through the ditch to the Ballona ranch lands occupied by the grantees. The referees' report and the decree confirming the same in the partition suit, divided the land into four classes, designated, respectively, first-class irrigable land, comprising 1,473 acres; second, land susceptible of cultivation without irrigation, and so lying as to be irrigable if there were water enough in the creek, herein designated as second-class land, comprising 1,581 acres; third, pasture land; and fourth, tide, swamp, and drifting sandhill land. It attached the right to all the water of the creek, so far as needed therefor, to the first-class lands, and set off to each tenant in common a portion of the first-

class land in severalty, with its due proportion of the water
of the creek, in lieu of his previous undivided interest in such
first-class land. The second-class, third-class, and fourth-class
lands are also divided in like manner. The decree made no
division of the water among the owners of the first-class land,
but declared that each owned a share of the water in propor-
tion to his interest in the land. The language is not expressly
as above given, but this is the effect of the judgment. Noth-
ing is said in the decree or report concerning the ditch above
mentioned, nor was there any mention of the creek or of any
water-rights therein in the complaint or elsewhere in the
record, except in the report of the referee and in the final
decree. It appears from the evidence that at that time there
were several ditches in use by which water of the creek was
diverted and used to irrigate portions of the ranch.

The ditch mentioned in the grant from Higuerra was, and
still is, known as the "upper ditch," and, with some changes
in route and in the point of diversion, it has been maintained
and used, as occasion required, ever since the year 1866. It
was so located that by means of it the water of the creek could
be used for the irrigation of some portions of the third-class,
or pasture, land owned by appellants and their predecessors
after the partition. These parties used the ditch to carry
water from the point of diversion in the Los Bueyes ranch
down to their first-class lands in the Ballona ranch, and in
connection with the use of the water on those lands they have
also from time to time, ever since the construction of the ditch,
used the water for irrigating portions of their third-class land.
The appellants now claim that this use of the water on third-
class lands has been continuous, or as nearly so as the de-
mands for irrigation required, and adverse to the rights of
all the other owners of first-class lands under the partition
decree, so that by reason of this use they now have a pre-
scriptive right to the use on their third-class land, which is
superior to the common right of the other owners of first-
class lands to the waters of the creek. The respondents claim
that this use on third-class lands has not been continuous, nor
attended by all the other elements and characteristics which
under the circumstances would be necessary to constitute an
adverse use of that description of property, and that it is not
adverse to their rights to use the water on both first-class

and second-class lands. The finding was against the appellants on this proposition, and this finding is the principal one challenged as lacking support in the evidence.

Upon an examination of the record we are of the opinion that, so far as first-class lands are concerned, this finding is sustained by sufficient evidence. There is much evidence to the contrary, it is true. A conflict of evidence usually occurs in cases of this character, and in such cases it is the province of the trial court to determine the truth of the matter. This court is obliged to give to the evidence the construction most favorable to the support of the findings. It would serve no useful purpose to review the evidence in detail. It covers many pages of the transcript, and it is sufficient to say that there is enough evidence to justify the finding of the court on this point. There are some general propositions which may be stated for the purpose of explaining our construction of the evidence.

The original owners of the Ballona ranch held riparian rights in Ballona Creek extending to the entire area of the ranch. When thereafter their ownership became divided among many persons having undivided interests in common, each held an undivided interest in the riparian right in proportion to his interest in the land. The effect of the decree in partition was to detach the riparian right from all of the land except that designated therein as first-class irrigable land, and that described above as second-class land, and to give to the owners of first-class land exclusive use of the water thereon in preference to the use upon the second-class land. This, however, did not change the character of the water-right belonging to such land from a riparian right to a right appurtenant. And this is the case, notwithstanding the fact that many of the allotments of first-class lands did not abut upon the stream. Its effect was merely to cut off the other lands of the ranch from a participation in the riparian rights theretofore appertaining to the entire ranch. A judgment in partition is a mere severance of the unity of possession and community of interest, and does not in any other respect affect the character of the title or estate, unless it expressly so declares. (*Christy* v. *Spring Valley Water Works,* 68 Cal. 75; *Wade* v. *Deray,* 50 Cal. 380.) This right, like other riparian rights, was in strict technical language

"parcel of the land," and not a right appurtenant. This distinction, however, is not important, except in the interpretation of the findings and decree in this case, which, as is manifest from the context, used the word "appurtenant" as the equivalent of "riparian" in speaking of the right to use water of the creek on the lands of the Ballona ranch. It was not necessary to mention or describe in the complaint in the partition suit the water-rights in the creek. Being parcel of the land itself, the description of the land included the water. The same would have been true if the water-right had been merely a right appurtenant.

The decree in Young v. Machado did not attempt to make any division of the water among the respective owners of first-class land, nor to designate the times or manner of its use. After the partition, as before, the right to the stream, or to the water while it remained in the stream, was in the nature of a right in common, so that, as in the case of other tenancies in common, the use by the owner of a proportional right could not be justly considered as hostile to the common right of the others, unless it was characterized by much greater manifestations of hostile intent and more serious detriment than would be necessary if the hostile claimant had no part in the common right or use. The parties to whom the water was allotted for use on the first-class lands did not divide the stream into small parts so as to give each landowner a continuous flow of his proportional part. It was diverted by some three or four ditches, including the upper ditch, with headgates or dams located at different places, and each serving different tracts, and it was divided upon the plan of giving to each owner the use of all the water of the ditch leading to his tract, or of a sufficient quantity thereof to make a practicable "irrigating head," for a certain number of days or hours in each month or other fixed period.

The grant by Higuerra of the right to take out water and conduct it over his land by means of the existing ditch to the land below contains nothing in its terms inconsistent with the theory that the grantees were intending by that means to secure only a more convenient and effectual use of the water as riparian owners. A riparian owner may, for the more convenient use of the water on his riparian land, go upon the land of another farther up the stream, with the consent of

such landowner, and there divert the water for use upon land below, or he may raise it to the surface of his land by pumps or other artificial means. In either case his act in so doing is not necessarily different from the exercise of his right as a riparian owner, and such a diversion above his land may or may not be considered as an attempt to make an appropriation of the water independent of the riparian right, according to the circumstances that appear with respect to the particular case.

It is apparent from the evidence in the case that there was a general understanding and custom among all the owners of water in the creek in question that their rights to the creek should be made available by diverting the entire stream and dividing it among the different owners of land, and that all or any part of the water could be diverted and used by any one when not required by the others. No one has ever claimed that he had a right to have the stream run down through his land irrespective of any use he desired to make of it for the irrigation thereof, nor objected to any one using the water when he did not want it himself. A riparian owner, under the circumstances of scarcity such as here existed, and in view of the prevailing understanding and custom, would have no right, as against other owners in common of the same land and of a part of the same water-right, to insist on the full flow of the stream over his land for the mere pleasure of looking at it as a feature of the landscape. His right would be limited to so much of the water as should be reasonably necessary for use on his riparian land. It further appears that the flow of water in the creek was variable, according to the time of the year and the amount of the seasonal rainfall, so that in some periods of each ordinary year there was abundance of water for all claimants, not only those of the first-class lands, but of any others who wanted to use the water upon other lands, and it is apparent from the evidence that all the parties considered that when this was the case every person was at liberty to take such water as he wished or needed, whether it was upon first-class lands or upon other lands.

The court below evidently considered all of these circumstances as affecting the evidence and explaining the character of the acts and diversions made by the appellants which are

now claimed to have been adverse, and upon a consideration of all of the evidence reached the conclusion, which we think was justified, that there was not an adverse use of the water upon the third-class lands for a sufficient length of time to create a right by prescription.

The appellants complain that several subordinate findings are not sustained by the evidence. One of these is, that the court found that the water used by appellants through this upper ditch was applied only to the irrigation of a certain described area of land which, it is claimed, is much less than that which the evidence shows. We think there was evidence to show that the water was used upon a larger area of the third-class land than that described, but as the use of the water was not adverse, and this finding does not go to the amount used, it is clearly immaterial.

There is a finding that the appellants believed that by reason of the Higuerra deed and their use of the water through the ditch therein mentioned they had acquired a valid right to the use of sufficient water to irrigate the third-class lands irrigable from the upper ditch, and it is further found that their use of the water in this manner was accompanied by express recognition and admission to the full extent of the rights of the plaintiffs and other defendants owning first-class irrigable lands to the use of the water in preference to the use of the appellants. It is claimed by the appellants that these two findings are inconsistent. This, however, is not necessarily the case. It appears, as above stated, that at many times there was an excess of water above the amount necessary, and that at such times there was a general consent that it might be taken by others for use upon other than first-class lands. It must be presumed, therefore, that the court meant by this finding to state that the appellants believed they had a right to the use of whatever surplus of water there might be after the wants of the first-class lands were supplied. This also explains the action of the court below in finding that there was no estoppel. If the claim of the appellants was only to the surplus, it is clear that there could be no estoppel raised against those who were entitled to the first right.

The case of *Fogarty* v. *Fogarty*, 129 Cal. 46, is cited in support of the proposition that the use of the water by the appellants under the Higuerra deed was necessarily adverse, and

that therefore the finding that it was not adverse is contrary to the evidence. The expressions in the Fogarty case were made with reference to the use of water under an agreement made between the plaintiff and defendant in that case, which provided for the use of water in pursuance of the agreement, and under those circumstances it was said: "It must be conclusively presumed that the subsequent user of the right agreed upon was under the agreement, and therefore adverse." Under the circumstances there considered this may be a correct statement of the law, but it is not correct when it is applied to a case where an adverse right is asserted against a third person by reason of a deed to the claimant not executed by the third person, but by other persons not in privity with him. The use would be adverse as to the grantor, but not necessarily so as to the third person.

The appellants also invoke the proposition that proof of ancient use of a right gives rise to a conclusive presumption of a grant. This may be true as an abstract proposition of law where there is proof of ancient and unquestioned use without other explanation, and the use has continued for a great many years, but it has no necessary application to the case in hand. Here, while there had been a use for many years, it was explained by evidence to the effect that it was not adverse, and that the prior rights of other parties were continually recognized, and, further, that the use had not been continuous, but had been interrupted from time to time.

There is a clause in the decree enjoining the appellants from the further use of this upper ditch, and this, it is claimed, is erroneous. So far as the rights of owners of first-class irrigable lands are concerned, this is an objection which is not available to the appellants upon this appeal. There was an attempt to appeal from the judgment, but it proved ineffectual and was dismissed upon motion. In the absence of an appeal from the judgment the terms of the decree cannot be questioned. With respect to the rights of owners of second-class lands there are some other considerations in this connection to be hereafter stated in this opinion.

The appellants also complain of a conclusion of law to the effect that the owners of first-class lands have a right to enter upon the lands of other owners for the purpose of securing their rights to the water, evidently meaning that they have

a right to enter for the purpose of making such repairs to the
ditches as may be necessary. This also is a question which
cannot be raised upon this appeal.

Another objection is, that the findings are in five separate
volumes, only one of which is signed by the judge, and this
latter, it is claimed, constitutes the only findings that can be
considered. Waiving the proposition that this point could
only be raised upon a direct appeal from the judgment, it is
sufficient to say that all these volumes of the findings are in
the judgment-roll, that each volume is identified by the signa-
ture of the clerk showing the filing of the same, that the con-
nection of the language at the end of each volume and the
beginning of the next is such as to make it clear that they
were intended as one continuous document; so that, while we
cannot commend this method, we cannot characterize it as
error.

A further complaint is made of a finding of the court to the
effect that rights of owners of second-class lands to the water
of the creek under the partition decree of 1868 were superior
and paramount to any right of the appellants to use the water
through this upper ditch or otherwise for the irrigation of
their third-class lands. The effect of the decree in the parti-
tion suit was to assign the water for the use of the first-class
lands in preference to all others, and the surplus, if there
should be any, to the second-class lands, in preference to the
other lands of the ranch; so that, at the time the decree was
rendered, there could be no question but that the right of the
owners of the second-class lands was superior to that of the
owners of third-class lands in the waters of the creek. But,
although the evidence is sufficient to show that the appellants
in their use of the water through this upper ditch upon their
third-class lands recognized the superior right of the owners
of first-class lands to the waters of the creek, and, therefore,
that such use by appellants was not adverse, yet we cannot
hold it sufficient to show that they at any time considered or
admitted that their rights were subject to the rights of the
owners of the second-class lands. Nor does it appear that the
owners of second-class lands ever claimed the water for use
on lands of that class, or, at all events, that many of them
ever did. This class of land, under the decree, had no right to
water except when there was enough water in the creek after

the first-class lands were supplied. The evidence shows that water was seldom used upon any of it, while it is clear that it was generally used upon the third-class lands of appellants. We think this portion of the finding was unsupported by the evidence, at least as to the whole of the second-class lands. It does not appear to be of very much importance, because it is practically certain that in ordinary seasons there will be no surplus of water during the dry season over that required for the first-class lands. But during other portions of the year, and during seasons of unusual rainfall, the right to the surplus after the first-class lands are supplied may be a valuable one. It is not necessary, however, because of this error, that a new trial of all the issues should be granted. The trial appears to have consumed a number of weeks, and to have required a great deal of expense, and to have been devoted almost entirely to other issues. It will be sufficient to order a new trial of the issue only as to the adverse use of the appellants with respect to claimants of water for the irrigation of the second-class lands alone, leaving the finding and decree to stand in all other respects, except as far as it may be necessary to modify them for the purposes of the new trial. If upon a second trial of this issue the courts should conclude that the appellants have acquired prescriptive rights paramount to those of the owners of second-class lands, the decree restraining the use of the upper ditch must be modified so as to give them a right to use the ditch at such times as there may appear to be water which they have the right to use.

It is therefore ordered that the order denying a new trial be modified to this extent only, to wit: That a new trial be granted solely upon the issue whether the appellants' rights to the water of Ballona Creek for use upon their third-class, or "pasture," lands, as designated in the partition suit, is or is not superior, by reason of continuous adverse use, to that of any party hereto to the water thereof for use upon lands in said partition suit classed as second-class land, and whether or not the appellants may not maintain the "upper ditch" to carry water to their third-class land, when such water is available as against the rights of owners for use upon such second-class lands, and that part of the decree which adjudges that the rights of appellants to water for third-class land is subject to the rights of other parties for use upon

second-class land is vacated. The decree, so far as it enjoins further use of the "upper ditch" as against the right of second-class lands, is suspended until further action by the court below in pursuance of this mandate. In all other respects the order stands affirmed and the decree unaffected.

Angellotti, J., and Van Dyke, J., concurred.

Hearing in Bank denied.