[Sac. No. 1605.   In Bank.—January 2, 1909.]

ELIZABETH TURNER, Administratrix of the Estate of
Wm. C. Turner, Deceased, and MERCED SECURITY
SAVINGS BANK, Respondents, v. THE JAMES
CANAL COMPANY et al., Appellants.

RIPARIAN RIGHTS—SOURCE AND NATURE.—The right of a *riparian owner*
to the use of water bordering on his land does not arise from the
fact that the water is flowing, and that any part thereof taken from
the stream is immediately replaced by the water from the current
above it; but it comes from the situation of the land with respect to
the water, the opportunity thereby afforded to divert and use the
water upon the land, the natural advantages and benefits resulting
from the relative positions, and the presumption that the owner of
the land acquired it with a view to the use and enjoyment of these
opportunities, advantages, and benefits.

ID.—LIMITATION OF RIGHTS—REASONABLE USE FOR IRRIGATION.—Out of
regard to the equal rights of others whose lands abut upon the same
water, the use of the water for irrigation, so far as it affects the
rights of others similarly situated, must be reasonable, and must be
confined to a reasonable share thereof.

ID.—RIPARIAN RIGHTS IN WATER NOT FLOWING.—Subject to the com-
mon limitation of reasonable use, the right of the riparian owner to
use water upon adjoining land applies as well to the water of a lake,
pond, slough, or any natural body of water, by whatever name it
may be called, as to a running stream. A current is not essential
to the existence of riparian rights.

ID.—SOURCE OF SUPPLY.—Ordinarily a permanent non-flowing body of
water, such as a pond or lake, has some source of supply. But even
in the case of a pond or lake caused by an overflow, which has no
other source of supply, and which by reason of seepage and evapo-
ration will soon disappear, the riparian owners have a right to the
reasonable use of such water, both for domestic purposes and for
irrigation, while it lasts.

ID.—SLOUGH FED BY RIVER—EXTENT OF RIPARIAN RIGHTS.—Where ripa-
rian land is situated upon a slough which is always connected with
and fed by a river, the owner thereof has an equal right to a reason-
able share of the water of the river with another person who owns
land abutting upon the main stream, regard being had to the quan-
tity of land of each, their respective interests, and the quantity of
water in the slough, and all other circumstances affecting the ques-
tion of a reasonable division of the water, in case there should not
be enough to supply the needs of all.

ID.—ORIGIN OF SLOUGH AND RIVER SUPPLY IMMATERIAL.—So far as
the right to a reasonable share of the water found in the slough

is concerned, it is immaterial how or from what source the water comes into the slough or what causes or forces excavated the channel of the slough, provided both are the results of natural forces. When the supply comes from one river, the slough is part of that river, and riparian rights on the slough are to be determined with reference to the needs of lands riparian to that river; and when the slough becomes a part of another river with which it is connected, the lands riparian to the slough are entitled to a reasonable share of the whole waters of that river, including the slough.

ID.—RIGHT OF RIPARIAN OWNER UPON SLOUGH TO DIVERSION FOR IRRIGATION—FLOW OF RIVER AFFECTED.—A corporation owning lands riparian to the slough, which is there connected with and properly a part of the San Joaquin River, has the right to take its share of the water in the slough, including the water of that main river flowing therein, at any convenient point for the proper irrigation of its riparian land, whether such point of diversion is upon its own land or not, although it may affect the flow of the river, provided it does not injuriously affect the rights of owners abutting upon the river between the point of diversion and the company's riparian land, and does not unreasonably waste the water, as against lower riparian owners.

ID.—MEANS OF DIVERSION AND DELIVERY TO LOWER OWNERS IMMATERIAL, UNLESS WASTE APPEARS.—The means of diversion to riparian land at any point above the stream for reasonable use, without unreasonable waste, is immaterial; and its delivery to the use of lower riparian owners by means of a ditch crossing non-riparian lands belonging to other persons, with their consent, is immaterial and cannot be the subject of objection by such lower riparian owners, unless it appears that there is unreasonable waste by evaporation and seepage from such ditch before such delivery.

ID.—MEANS OF UTILIZING OVERFLOW FROM RIVER DURING FLOODS BY LOWER OWNERS.—The fact that lower riparian owners on the river have used means to utilize flood waters overflowing their lands, so as to add to their value, cannot affect the rights of upper riparian owners to a reasonable use of the stream for irrigation.

ID.—COMMON LAW AS TO FLOW OF STREAM MODIFIED BY COMMON RIGHT TO REASONABLE USE.—The common-law rule that a lower riparian proprietor is entitled as of right to have the stream flow to his land undiminished is modified as between riparian owners in this state, to which that rule is not suited, and in which it is settled that each riparian owner has the right to a reasonable use of the water on his riparian land for the irrigation thereof, and that it is the common right of all riparian owners to a reasonable share of the water.

ID.—REASONABLE SHARE A QUESTION OF FACT.—The determination as to what is the reasonable share of each riparian owner is a question of fact to be decided according to the circumstances of the case.

ID.—RIGHTS OF UPPER RIPARIAN PROPRIETOR.—An upper riparian proprietor is entitled to a reasonable use of the stream for irrigation,

although it may diminish the flow to a lower proprietor, and put him to a substantial inconvenience in his use of the stream.

APPEAL from a judgment of the Superior Court of Merced County and from an order denying a new trial. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

N. W. Coldwell, and W. C. Graves, for Appellants.

J. K. Law, J. W. Knox, Frank H. Short, W. B. Treadwell, and Edward F. Treadwell, for Respondents.

SHAW, J.—The defendants have appealed from the judgment and from an order denying their motion for a new trial.

There is no substantial conflict in the evidence upon any important fact in issue. The questions presented relate to matters of· law applicable to the facts found and to the legal effect of the evidence.

The plaintiffs each own a tract of land in Merced County riparian to the San Joaquin River, their combined holdings aggregating some six thousand acres. They sue to enjoin the defendants from diverting water from said river. The defendant, the J. G. James Company, owns something near twenty thousand acres of land which is riparian to a body of water called Fresno slough. The defendant, the James Canal Company, as successor to the defendant, Enterprise Canal & Land Company, is the owner of a large canal beginning at a point on said river thirty or forty miles above the junction of the river with Fresno slough, and extending over intervening lands belonging to other parties and not riparian either to the river or to Fresno slough, to and upon the lands of the J. G. James Company. The remaining defendants are lessees of portions of said land of the J. G. James Company.

The J. G. James Company claims the right as riparian owner on Fresno slough to take from it a reasonable quantity of its waters to irrigate its said lands. As such riparian owner of lands on the slough, it also claims the right to a reasonable quantity of the water of the San Joaquin River to be used in the irrigation of its said land situated upon Fresno slough, and the right to take such water for that purpose at the head

of its canal on the river, and carry it through the canal over the intervening non-riparian land, to the land on the slough. The court below adjudged that the defendants had no right to divert any of the water of the San Joaquin River at the head of said canal, or at all, for use on said lands of the J. G. James Company. With respect to the water of Fresno slough, the judgment is that the defendants have no right to use the same on the lands of said J. G. James Company except such water as should flow into said slough from Kings River. It appears from the findings that water often runs into Fresno slough from the San Joaquin River, but the court held that the defendants had no right to the use of that water by virtue of the ownership of lands riparian to the slough.

Both the San Joaquin and Kings rivers have their sources in the Sierra Nevada Mountains. The San Joaquin flows out on the plain of the San Joaquin valley in a westerly direction by the station of Herndon in Fresno County, to a point at or near its junction with Fresno slough, where it turns northerly and runs along the central part of the valley to an arm of San Francisco Bay near Stockton. Kings River emerges upon the plain of the San Joaquin valley some thirty miles southerly from the San Joaquin, and runs westerly to about the center of the valley, from which point its flow, in times of high water, depends upon differing circumstances. If the rivers from points further south have not filled Tulare Lake, which lies to the south of Kings River, that river usually turns south and flows into the lake. If the lake is full, it turns northward, flowing along the center of the valley and into and along Fresno slough until it unites with the water of the San Joaquin River, and the two from thence form one stream to the bay. Sometimes, and especially at extremely high floods, Kings River divides, a part flowing into Tulare Lake and a part to the north through Fresno slough to the San Joaquin River. Except at times of high water Kings River does not reach Fresno slough or Tulare Lake. Fresno slough is a somewhat crooked body of water about fourteen miles long, extending from its connection with the San Joaquin River in a general southerly direction toward Kings River. Its width varies from one hundred to two hundred feet. The floods referred to come in the summer from the melting of the snows in the high mountains and, occasionally, during the winter

season from heavy rains. These rains occur at uncertain intervals, generally when water is not required or used in great quantity, and the floods from this cause are of minor importance to the parties interested in this case. The summer floods come each year during the months of May, June, and July, and sometimes last as long as six or eight weeks. In some years they are not of sufficient volume to bring the water of Kings River to Fresno slough. The court finds that at such times as the floods are sufficiently high to bring the Kings River water to Fresno slough, the waters of the two rivers often flow at different stages or elevations, and that when the San Joaquin is the higher, a part of the water thereof flows or "backs up" into Fresno slough and runs southerly therein for some fourteen miles to the south end thereof, until the slough is filled to the level of the river, or until it meets the rising water of Kings River coming into the slough from the south. Also, that the slough, when not fed from Kings River water, is kept filled by water from the San Joaquin, and rises and falls with that river. It necessarily follows that such current as there may be in the slough changes from time to time, flowing northerly when the San Joaquin River is falling and also when Kings River is the higher of the two, and southerly when the San Joaquin is rising, or when it is higher than Kings River. The court does not find the length of time of each season that it happens that the water of Kings River does not reach Fresno slough and when, consequently, the slough receives water from the San Joaquin River exclusively, nor does it find what proportion of the years this latter condition prevails during the entire year. It clearly appears from the evidence, however, that this is the usual and ordinary condition, that seldom, during the dry season of any year, does Kings River water flow into Fresno slough for more than six weeks, and that, during that season, in some years it does not flow into the slough at all. It also appears that when there is a flood sufficient to bring Kings River water to the slough, the San Joaquin is also very high and the combined waters are of such volume that they are probably a menace rather than a benefit, overflowing, to their damage, the lands of both parties to this action, and that generally, at such times, the diversion of all the water that defendant's canal would carry would have no perceptible or appreciable

effect on the volume of the water in the stream reaching the lands of the plaintiffs.

It is clear from these conditions that the privilege of using water from Fresno slough upon their lands during the very considerable period of each year when there is no water from Kings River flowing therein, is one of great value to the defendants. The judgment forbidding such use undoubtedly will cause the defendants substantial injury. The theory of the plaintiffs is that the law of riparian rights, when applied to land bordering upon Fresno slough, does not include the right to take water from the slough for use upon the land, if such taking will diminish the flow in the San Joaquin River to the lands below the junction of the slough. It appears that during a considerable part of the time the water in Fresno slough is stagnant, and the plaintiffs argue that riparian rights in a body of water do not attach to lands bordering thereon except when the water consists of a flowing stream. The right of a riparian owner to the use of water bordering upon his land does not, as plaintiffs contend, arise from the fact that the water is flowing and that any part thereof taken from the stream is immediately replaced by water from the current above it. It comes from the situation of the land with respect to the water, the opportunity afforded thereby to divert and use the water upon the land, the natural advantages and benefits resulting from the relative positions, and the presumption that the owner of the land acquired it with a view to the use and enjoyment of these opportunities, advantages, and benefits. (*Duckworth* v. *Watsonville etc. Co.,* 150 Cal. 526, [89 Pac. 338].) Out of regard to the equal rights of others whose lands may abut upon the same water, the law has declared, as will hereafter be more fully shown, that the use of the water for irrigation, so far as it affects the right of others similarly situated, must be reasonable, and must be confined to a reasonable share thereof. But with this common limitation, the right to use water upon adjoining land applies as well to the water of a lake, pond, slough, or any natural body of water, by whatever name it may be called, as to a running stream.

There is no decision in this state upon the subject of the riparian rights of the owner of land upon a body of water not flowing. Nor is there anything in any of our decisions in-

timating that such rights do not exist. In *Duckworth* v. *Watsonville etc. Co.,* the question was suggested, whether the right existed to make an appropriation of the waters of a lake, under the code which refers only to "running water" (Civ. Code, sec. 1410), but as it was held that the finding that there was a running stream was sustained by the evidence, there was no decision further than to hold that it was not necessary to a right of appropriation under the code that the stream should run to the sea or to a junction with some other watercourse. This point has no bearing on riparian rights. It was also held that one owning land upon an outlet of a lake, but not on the lake itself, which outlet was dry for a considerable part of each season, could not take water from the lake above, during such dry period, to use on his land upon the outlet below. This was not, as counsel suggests, based on the fact that there was no *flowing* water in the outlet at such times, but on the fact that it then contained no water at all.

Upon the assumption that riparian rights do not exist, except to water in a "watercourse," counsel cite authorities to show that in order to constitute a watercourse there must be water flowing, that it must flow in a particular direction, and that it must have a source and a mouth. As we have concluded that riparian rights do exist in a body of water not flowing, it is unnecessary to discuss the question of the things essential to a watercourse.

No authority is cited in favor of the proposition that riparian rights exist only in flowing streams. After a somewhat exhaustive search we have not succeeded in finding any decision to that effect. That such rights exist in any body of water, whether flowing or not, is shown by the following quotations from textbooks and decisions: "The rights of a riparian proprietor, so far as they relate to any natural stream exist *jure naturæ*, because his land has, by nature, the advantage of being washed by streams." (1 Farnham on Waters, sec. 63, p. 280.) "The principle upon which these rights are founded is equally applicable to all bodies of water, whether large or small, tidal or non-tidal." (1 Farnham on Waters, sec. 62, p. 278.) "The character of the water is immaterial, and the rights attach to lakes and ponds, where there is no current, as well as to streams." (1 Farnham on Waters, sec. 63, p. 282.) "I regard it as immaterial whether a current

flows through the bayou or not. Water may be navigable without a current, and it might not be with. Neither is a current essential to the existence of riparian rights. They may exist in lakes or ponds where there is no current." *Turner* v. *Holland,* 65 Mich. 466, [33 N. W. 283].) "The rules governing riparian rights on streams apply, *mutatis mutandis,* to grants of land bordering on lakes." (*Lamprey* v. *State,* 52 Minn. 181, [38 Am. St. Rep. 541, 53 N. W. 1139].) "When land is bounded by a lake or pond, the water, equally as in the case of a river, is appurtenant to it; it constitutes one of the advantages of its situation, and a material part of its value." (*Hardin* v. *Jordan,* 140 U. S. 391, [11 Sup. Ct. 815].) "The defendant insists that plaintiff held no riparian rights on account of the fact that the natural character of the slough has been changed so as to become, at the place whereon the property of the parties abuts, a pond or body of water without a current. We have never heard that riparian rights depended upon the character of the current in the water upon which these rights extend. They exist if the water be an artificial pond made by a dam in a watercourse, as well as when it is an unobstructed running stream." (*Finley* v. *Hershey,* 41 Iowa, 393. See, also, *Robinson* v. *Davis,* 47 App. Div. 405, [62 N. Y. Supp. 444; *Lembeck* v. *Nye,* 47 Ohio St. 354, [21 Am. St. Rep. 828, 24 N. E. 686] ; *Priewe* v. *Wisconsin, etc. Co.,* 93 Wis. 546, [67 N. W. 918] ; *Cedar Lake H. Co.* v. *Cedar C. etc. Co.,* 79 Wis. 302, [48 N. W. 371] ; *Valparaiso etc. Co.* v. *Dickover,* 17 Ind. App. 233, [46 N. E. 591] ; *Fernald* v. *Knox Woolen Co.,* 82 Me. 56, [19 Atl. 93] ; *Draper* v. *Brown,* 115 Wis. 366, [91 N. W. 1001] ; *Delaplaine* v. *Chicago etc. Co.,* 42 Wis. 214, [24 Am. Rep. 386] ; *Bassett* v. *Salisbury Co.,* 43 N. H. 578, [82 Am. Dec. 179].) Many of these decisions relate to rights in the water other than the use of it for irrigation, but the context shows that the principle was considered a general one applicable to riparian rights of every description. The plaintiffs seek to found a distinction upon the assumed fact that the waters of a pond or lake have no source of supply, and that if the riparian owner takes water therefrom the water of such lake or pond will ultimately become exhausted. It is a mistake to suppose that a permanent pond or lake has no source of supply. There is a constant drain upon such a body of water by evaporation into the air and

sometimes by seepage into the surrounding soil. If there were no supply the lake or pond would soon cease to exist. But even in a case of a pond or lake caused by an overflow, which has no other source of supply, and which by reason of seepage and evaporation will soon disappear, we think it must be conceded that the riparian owners have a right to the reasonable use of the water both for domestic purposes and for irrigation of the adjacent land. If such right does not exist, the water would disappear without advantage to any one, whereas by the use thereof it might be made of great benefit to the adjoining owners. We can see no reason why the law should declare that in such a case all of the adjacent owners of land must abstain from taking any of the water and thus allow it to remain uselessly in its position until the forces of nature remove it.

The court finds, however, that Fresno slough is always connected with the San Joaquin River so that water will flow from the river into the slough, or into the river from the slough, as one may be higher than the other at the particular time. Under the circumstances we think that a person owning land abutting upon the slough has an equal right to take water therefrom, and an equal right to a reasonable share of the water, with another person who owns land abutting upon the main stream. In the case of any enlargement in the width of a flowing stream, it always happens that there is but little current at the sides, and in the case of an extensive enlargement there would be either a body of still water adjoining the flowing stream in the center, or there would be an eddy whereby a part of the water of the stream would flow back around the edge of the extension and enter the main channel again at the upper end thereof. No line could be fixed beyond which it could be declared that the water could not extend so as to carry riparian rights in the stream to the land along its borders. The only reasonable conclusion is that no such distinction exists, and that the rights of all persons owning land adjoining upon the stream, or upon any bay, inlet, or slough connecting therewith, are equal and coextensive with those of persons owning land bordering upon the main current or channel, regard being had, of course, to the quantity of land of each, their respective interests, the quantity of water in the slough as compared to that in the river, the

quantity the slough is capable naturally of diverting from the river, and all other circumstances affecting the question of a reasonable division of the water in case there should not be enough to supply the needs of all.

So far as the right to use a reasonable share of the water of Fresno slough for the irrigation of land riparian thereto is concerned, it is of no consequence how, or from what source, the water comes into the slough, or what causes or forces excavated the channel of the slough, provided both are the results of natural forces. The particular natural cause which made the excavation is immaterial to the question in any event. The source from which the water is derived becomes material only in determining what is a reasonable share of the water. While the water is running into the slough from Kings River the slough is a part of that river, and the reasonable share of the water apportionable to the lands riparian to the slough is to be fixed by reference to the rights and needs of other lands riparian to Kings River. When Kings River does not run into the slough, the latter becomes a part of the San Joaquin River, with which it is then connected, and during that period the lands riparian to the slough are entitled to a share of the water of the whole San Joaquin River, including the slough. This latter right is the result of the fact that while that condition prevails, the slough is really a part of the river, and the taking of water from the slough will affect the flow of the river, either by preventing by that much an addition to the main stream when that stream is so low that the water will flow into it from the slough, or by drawing water into the slough from the river when the slough is lowered by the diversion. There is no more reason for declaring that the owner of lands on the river can prevent the owner of lands on the slough from taking a reasonable share of the water of the slough, although it may affect the flow of the river, than there is for holding that the owner of land on the slough could prevent the riverman from taking his reasonable part of the water of the river to the depletion of the water in the slough. One has as clear a right as the other to the natural advantages of his situation, and an equal right to complain of the deprivation thereof by the undue use of the other.

Inasmuch as the J. G. James Company's lands are riparian to Fresno slough, and the slough is, for a considerable period

each year, connected with, and properly a part of, the San Joaquin River, it follows that, for the irrigation of such lands, it has, during such periods, a right to take its share of the water from the main river at any convenient point thereon, whether such point of diversion is upon its own land or not, so long as such taking does not injuriously affect the rights of owners of land abutting upon the river between the point of diversion and the company's riparian land. The fact that it must carry the water from the river over intervening non-riparian lands, belonging to other persons, is of no consequence. The person over whose land it is carried could object, of course, but other riparian owners have no privity with such third person, and cannot avail themselves of his rights. So long as the riparian owner takes no more than his reasonable share and uses it upon his riparian land, without unreasonable waste, other riparian owners below have no right to inquire, how, or by what means, or at what place, he manages to divert his share from the stream, whether at a point on his own land, or at some point far above, where the elevation of the stream will be sufficient to carry it by gravity to the surface of his land, or whether by a dam and headgate, or by pumps and buckets. This principle was practically decided in *Charnock* v. *Higuerra,* 111 Cal. 479, [52 Am. St. Rep. 195, 44 Pac 171]; and *Rose* v. *Mesmer,* 142 Cal. 329, [75 Pac. 905]. Its necessity is illustrated in the first-named case by the suggestion of the obvious fact that unless the water can be obtained by a dam on land above, in many instances it could not be obtained at all, owing to the fact that the surface of the adjoining land is of necessity higher than the surface of the stream. To restrict the riparian right in such cases to the taking of water by pumps operating only upon the land where it is to be used, would be to make it often practically valueless, and would be unreasonable. In *Rose* v. *Mesmer* it is said: "A riparian owner may, for the more convenient use of the water on his riparian land, go upon the land of another farther up the stream, with the consent of such landowner, and there divert the water for use upon the land below, or he may raise it to the surface of his land by pumps or other artificial means." In *Jones* v. *Conn,* 39 Or. 45, [87 Am. St. Rep. 634, 64 Pac. 855, 65 Pac. 1068], the defendant, a riparian proprietor, was diverting water for irrigation by

means of a ditch leading from a dam some two miles above
his land.  The plaintiff owned land on the stream, below the
defendant's land.  The court said: "The defendant was not a
wrong-doer when he used the water of the stream for the
purposes of irrigation, nor does the fact that his land lies
above the level thereof, so that it cannot be irrigated by
means of ditches wholly on his own premises, affect his right
to the use of the water."  In such cases it may be that there
will be an unreasonable waste of water by carrying it in open
ditches subject to evaporation and seepage, and to that ex-
tent the method and place of diversion is a proper subject of
inquiry in determining the comparative rights of different
riparian owners.  As to the lands upon the stream between
the place of diversion and the place of use, a different ques-
tion is presented.  It has been held that this particular
diversion is unlawful, so far as it operates to the injury of
such intervening land.  (*California Pastoral etc. Co.* v. *Enter-
prise Canal & Land Co.,* 127 Fed. 742.)  But no such ques-
tion as this is presented here.

The decision in *Miller & Lux* v. *Enterprise Canal & Land
Co.,* 145 Cal. 652, [79 Pac. 439], does not conflict with these
conclusions, but rather confirms them.  In that case there
was a finding that Fresno slough was not a part of the San
Joaquin River, but was a part of Kings River.  The court
below had granted a new trial to J. G. James, the owner of the
lands bordering on Fresno slough, and the predecessor of
the J. G. James Company, a defendant here.  The present
case, with respect to the character of Fresno slough, was de-
cided largely upon evidence given in the case cited, which upon
the trial of this case was read from the record in that case.
Referring to that evidence, the court in that case said that it
was of such character that it authorized the court below to
grant a new trial on the ground that the finding above men-
tioned was contrary to the evidence.

The level of the plaintiffs' land is such that during the
floods above mentioned the water of the San Joaquin River
usually overflows and covers an extensive area thereof, de-
posits sediment thereon, and thereby moistens, fertilizes, and
enriches the soil, and causes it to yield larger crops of grass
than it would otherwise produce, which circumstance mate-
rially adds to the value of the land.  For the purpose of mak-

ing such overflow more valuable and beneficial, the plaintiffs, at great expense, have made levees, checks, and works for the regulation and control of the overflow and to obtain a greater use of it. The complaint alleges, and the court finds, that the diversion and use of the water of the river by the defendants for the irrigation of defendants' land, as threatened, will materially diminish the overflow of the river, during floods, and will deprive plaintiffs of the benefits of the natural irrigation and fertilization of their said lands from the overflowing of the river, to their great and irreparable damage. The position of the plaintiffs would require them to assert that they, as owners of riparian land having the above-mentioned advantages of situation, have the absolute right to prevent any diversion of the water of the river above by other riparian proprietors, for irrigation of their riparian lands, to the end that the river may continue high enough to overflow plaintiffs' land during the floods. It was upon this theory that the court gave its judgment, and not upon the theory that the reasonable use of the respective riparian owners required that the defendants should abstain from any use of the water in order to allow the plaintiffs to receive the overflow. In support of this position plaintiffs invoke the alleged common-law rule that a riparian owner upon a stream is entitled as of right to the full flow of the stream in its natural course through his land. The cases are numerous wherein the right of a riparian proprietor to have the stream flow to his land undiminished by any diversion made by an appropriator for use on non-riparian land has been declared. Among them may be cited *Lux* v. *Haggin,* 69 Cal. 396, [4 Pac. 919, 10 Pac. 674]; *Heilbron* v. *Last Chance etc. Co.,* 75 Cal. 121, [17 Pac. 65]; *Heilbron* v. *Fowler etc. Co.,* 75 Cal. 432, [7 Am. St. Rep. 183, 17 Pac. 535]. It is obvious, of course, that, if this supposed rule were strictly enforced against riparian owners, as well as appropriators, the waters of the streams in the state could not be used at all, but would flow to the sea, or until they disappeared in the sands and washes, without benefit to any one, except in the few instances where flood waters might escape naturally and flow upon lands situated similarly to those of the plaintiffs. The rule is evidently not suited to the conditions of a dry climate such as we have in this state. It is accordingly well settled here that each riparian owner

has a right to a reasonable use of the water on his riparian land for the irrigation thereof, and that the so-called common-law right of each to have the stream flow by his land without diminution, is subject to the common right of all to a reasonable share of the water. (*Lux* v. *Haggin,* 69 Cal. 396, [4 Pac. 919, 10 Pac. 674]; *Harris* v. *Harrison,* 93 Cal. 681, [29 Pac. 325]; *Wiggins* v. *Muscupiabe,* 113 Cal. 190, [54 Am. St. Rep. 337, 45 Pac. 160]; *Smith* v. *Corbit,* 116 Cal. 592, [48 Pac. 725]; *Gould* v. *Eaton,* 117 Cal. 543, [49 Pac. 577]; *Hargrave* v. *Cook,* 108 Cal. 77, [41 Pac. 18]; *Van Bibber* v. *Hilton,* 84 Cal. 588, [24 Pac. 308, 598]; *Gould* v. *Stafford,* 77 Cal. 67, [18 Pac. 879]; *Heilbron* v. *Land & Water Co.,* 80 Cal. 193, [22 Pac. 62]; *Barneich* v. *Mercy,* 136 Cal. 205, [68 Pac. 589]; *Rose* v. *Mesmer,* 142 Cal. 329, [75 Pac. 905].) These cases also declare that the determination as to what is the reasonable share of each riparian owner is a question of fact, to be decided according to the circumstances of the case, and that an upper riparian proprietor is entitled to a reasonable use for irrigation, although it may diminish the flow to a lower proprietor, and put him to substantial inconvenience in his use of the stream. Thus, in *Harris* v. *Harrison,* 93 Cal. 681, [29 Pac. 325]; *Wiggins* v. *Muscupiabe,* 113 Cal. 190, [54 Am. St. Rep. 337, 45 Pac. 160]; and *Smith* v. *Corbit.* 116 Cal. 592, [48 Pac. 725], it was held that the upper proprietors could be allowed to take the whole stream for certain hours or days, at stated intervals, and that the use of the lower owner could be limited to the intervening periods.

It is clear from these principles that the J. G. James Company is entitled to a reasonable use of the water of the San Joaquin River on its lands riparian to Fresno slough, during the times when the slough is properly a part of that river, although such use may interfere with the natural irrigation of the plaintiffs' lands by the overflowing of the river during floods. To what extent such interference can be allowed without being unreasonable is a question of fact for the trial court, upon a consideration of the needs of each, the comparative benefits of the respective uses, the comparative injuries caused to each by the deprivation ensuing from the use by the other, and all other circumstances bearing thereon. The court below held that the defendants were not riparian owners, that they had no right to any use of the water, and that

the rights of the plaintiffs were paramount. In so holding the court erred, and for this error the judgment and order must be reversed.

The question of the right of plaintiffs to have the river maintained at its high flood level for the natural irrigation of their lands, as against an appropriator for public or private use on non-riparian land, is not here presented, and we express no opinion on the subject, mentioning it only to distinguish it.

The judgment and order are reversed.

Angellotti, J., Sloss, J., Lorigan, J., Henshaw, J., and Hall, J., *pro tem.,* concurred.

NOTE.—Justice Hall, one of the justices of the district court of appeal for the first appellate district, participates herein *pro tempore,* pursuant to section 4 of article VI of the constitution, and an order filed August 4, 1908, pursuant thereto, having heard the oral argument in place of the late Justice McFarland, who was at the time of such argument unable to act by reason of sickness.

Rehearing denied.