HENRY WOODIN v. JUSTIN WENTWORTH ET AL.

*Water rights—Detention of water by dams.*

1. Every person owning land along a navigable stream is entitled to a fair and reasonable use of its waters; the right is common to all such proprietors and if such reasonable use by one injures another, the latter has no right of action. But the unreasonable use, detention or diversion of the water is actionable.

2. Damages lie for any such detention of the waters of a navigable stream, for the purpose of flooding, as prevents a lower owner from getting enough to run his mill, if he would have otherwise had enough.

3. The measure of damages for such an interruption of the natural flow of a stream as of itself prevents one from running his mill, is what the use of such mill was worth during the period of such deprivation.

Error to Bay. (Green, J.) June 4.—June 10.

CASE. Defendant brings error. Affirmed.

*Holmes & Collins* for appellant. It is the rule of law in this State that as between upper and lower proprietors on streams, each has the right to a fair participation and the reasonable use of the water, and an injury to one which is incident to the reasonable enjoyment of this common right by another is not subject to action; in such case the only foundation for an action is the damage caused by such use

of said waters as would be beyond the reasonable use of the same: *Dumont v. Kellogg* 29 Mich. 420; *Pitts v. Lancaster Mills* 13 Met. 156.

*Wisner & Draper* for appellees cited *Allison v. Chandler* 11 Mich. 542; *Gilbert v. Kennedy* 22 Mich. 129; *G. R. & Ind. R. R. Co. v. Heisel* 47 Mich. 393; *Heiser v. Loomis* 47 Mich. 19; *White v. Moseley* 8 Pick. 356; *Hitchcock v. Pratt* 51 Mich. 270.

SHERWOOD, J.  It appears from the record in this case, that, during the year 1882, the plaintiff was in possession of and used, and had for many years previous thereto, two mills in the township of Sherman, in Isabella county. These mills were run by water-power upon Chippewa river.  One was a grist-mill and the other a saw-mill, and stood side by side, and were joined together, and located about nine miles below the junction of the north and south branches of the Chippewa, which constitute the main stream.  The defendants at the same time possessed and controlled a dam known as the "Hudson Dam," and banking ground for logs below the dam, where they were deposited in large quantities by defendants; and this dam was used by them for the purpose of flooding the logs away from the banking ground, and running them to the jam below.  The dam was sixteen miles, by the current of the stream, above the mills of the plaintiff, and located on the south branch.  The plaintiff brought this suit against defendants for unlawfully holding back and diverting the waters of the river in the south branch, thereby preventing him from using his mills.  The plaintiff in his declaration particularly sets out the wrong complained of, and alleges that he was thereby deprived of the use of his mills and the profits thereof which he would have made if the waters of the Chippewa had not been diverted.

The defendants pleaded the general issue.  The case was tried before a jury, and upon the trial the plaintiff introduced testimony tending to show that after the middle of June of each year logs could not be driven on the south branch of the Chippewa river without the use of floods, and that

the defendants drove the logs so deposited by them on the banking ground above referred to by the use of floods from the Hudson dam, and that the waters of the south branch were held back by means of the dam, and that floods were let off from the dam at intervals during the season of 1882, commencing in the latter part of June and lasting up to the first of December; that by this use of the water the water was retained from the mills of plaintiff and let off in such a way that the plaintiff was deprived of the use of his mills during the season from the latter part of June to the first of December; that during this time the plaintiff was so deprived of the use of the saw-mill entirely, and of the full use of the grist-mill a portion of the time, and that the irregular manner in which the defendants let off the water was the cause of the failure of the mill to be operated during those times.

There was no evidence that the defendants detained the water in any way other than by means of the dam. The testimony of the plaintiff also showed, or tended to show, that the highest head of water that could be raised at any time in 1882 at the Hudson dam, and which was taken therefrom, was four feet two inches, and that during the summer of that year the usual head of water, when the sluice-gates were shut, was two feet and six inches, and that after the gates of the dam were opened, the pond on the Hudson dam would be emptied in about three hours. And the plaintiff also introduced testimony tending to show that the usual and ordinary flow of the waters from the two branches of the Chippewa referred to would furnish him with sufficient water with which to run his two mills to their full capacity during the entire season; that the waters of the north branch were not sufficient for that purpose; that plaintiff called upon the defendants during the fall of 1882 and told them the injury they were doing him, and asked them to stop holding the water back, and that the defendants refused this request, and told plaintiff he could not have the water nor have any pay for it.

The defendants on their part introduced testimony tending to show that the waters from the north branch of the Chippewa river were sufficient in volume to run the mills of plaintiff from the middle of June to the close of the season of 1882, and that the volume of water flowing into the plaintiff's mill-pond, aside from what went into the same from the south branch of the Chippewa river, was sufficient to have enabled the plaintiff to have run and operated his mills continuously during the time aforesaid without the aid of the water from the south branch of the Chippewa river; that the pond of the plaintiff covered from sixty to eighty acres, and in some places was about twelve feet deep; that the greatest extent of pond caused by the detention of water at the Hudson dam by the head of four feet six inches would be from six to eight acres; that the sluice-boards in the dam, during the months of June, July, August and September, leaked so that about one-quarter of the natural volume of the water passed through; that the use of the Hudson dam by the defendants did not interfere with or affect the head of water in the pond at the dam of plaintiff, and that the water of the south branch was not detained such length of time or in such manner as to affect the flow of water in the pond of plaintiff; that during the time in question there was a dam and mill between the forks of the Chippewa river and the mills of plaintiff, and also during the same time there was from five to seven million feet of logs in the channel of the stream, and that, by reason of the distance between the dam maintained by defendants and the mills of the plaintiff, and of the logs and other obstructions that were in the stream between the two, the water of the south branch flowed into the pond of the plaintiff in substantially its natural flow.

The jury, upon the evidence, and under the rulings and charge of the court, rendered their verdict in favor of the plaintiff for $766, and judgment was duly entered therefor. The defendants bring error.

A large number of exceptions were taken upon the trial, and to the charge and refusals to charge. As appears by briefs of counsel, the two main questions upon which a

review of the case is desired by this Court are the following: *First.* Were the rulings and charge of the circuit judge correct as to the defendants' right to hold the water back, as charged in the declaration? and *second.* If the jury found the facts to be as the plaintiff claimed them, was the rule of damages as laid down by the court correct, and could the plaintiff recover for the use of his mills, while idle, for the want of water wrongfully diverted by the defendants?

For the purposes of this suit we must regard the testimony offered sufficient prima facie evidence that each party was the owner of the premises he occupied and used upon the stream. The record shows these parties proprietors on the same stream, and as such each has a right to a fair and reasonable participation in the use of its waters. This right the law will always protect, and when violated, will furnish the proper means of redress. This right is common to all proprietors, and an injury to one, which is incident to the reasonable enjoyment of the common right by another, is not actionable. It is only the unreasonable use, detention or diversion of the water that is actionable. *Dumont v. Kellogg* 29 Mich. 420; *Hoxsie v. Hoxsie* 38 Mich. 80; *Buchanan v. Grand River Log Co.* 48 Mich. 367; *Pettibone v. Maclem* 45 Mich. 381; *Pitts v. Lancaster Mills* 13 Met. 156; *Thunder Bay River Booming Co. v. Speechly* 31 Mich. 336.

Upon the first question above stated the circuit judge held and charged the jury: "The plaintiff had the right to have the water of the south branch of the Chippewa river flow into and through his pond in its usual and ordinary mode of flowing, and any detention of the water by defendants, for the sole purpose of securing a flood, in such a manner that it could not be used by plaintiff in the running of his mills, was unreasonable and unlawful as to plaintiff, and entitles him to compensation for the resulting damages. If you find from the evidence that by reason of defendants' holding back the water by means of the dam, that plaintiff was thereby prevented from obtaining a sufficient supply with which to operate his mills, he is entitled to recover such damages as he has suffered by reason of being deprived of the use of his

mills." We think these charges are not subject to the exceptions taken, but that the rule laid down is within the former decisions made by this Court, and particularly the last case above cited, which is very much like the present in its facts. We find no occasion for modifying the views therein presented in any respect.

Upon the second question, the circuit judge charged the jury: "The measure of damages is such sum as the use of the mills was worth to the plaintiff during the time in the summer and fall of 1882, as plaintiff was unable to use them by reason of the water being held back. If the jury find for plaintiff they will award him such sum or damages as they find from the evidence that the use of the saw-mill was worth to plaintiff between July 1, 1882, and December 12, 1882, if you find from the evidence that he was unable to run or use his saw-mill between those dates solely on account of defendants holding the water back; and also such sum as they may find from the evidence that plaintiff has lost by reason of not being able to run the grist-mill to its full capacity between those dates, by reason of defendants holding the water back." The law upon the subject of damages thus stated was applicable to the facts as claimed by the plaintiff, and entirely proper upon his theory of the case.

We further think there was no error committed in receiving the testimony upon the subject of damages, which was objected to by counsel for defendants.[1]

The judgment must be affirmed.

The other Justices concurred.

---

[1] The plaintiff was permitted to testify against the objection of the defendants, as to what the use of the saw-mill was worth to him in the summer and fall of 1882 for the purpose of manufacturing lumber with a head of water with which to run it, and also what the use of the grist mill for the same time was worth with water with which to run it.