VALPARAISO CITY WATER COMPANY v. DICKOVER.

[No. 1,887.   Filed March 16, 1897.]

WATERS.—*Diversion of Water from Lake by Water Company.*—The diversion of water from a lake by a water works company in supplying a city with water is an extraordinary use of the water which can only be exercised reasonably and with proper regard for the rights of others.

SAME.—*Diverting Water from Lake by Water Company.— Liability to Riparian Owner.*—Where water works erected at the margin of a lake for the purpose of supplying a city with water results in a perceptible diminution of the water opposite the lands of another riparian owner to his injury during dry seasons, an action will lie against the water company for the damages accrued to the date of the commencement of the action.

LIMITATION OF ACTION.—*Special Damages for Diversion of Water.*— In an action for an unreasonable diversion of the water of a lake at certain seasons, the statute of limitation runs from the occurrence of the special damages for which complaint is made.

SAME.—*Liability for Unreasonable Diversion of Water from Lake.— Measure of Damages.*—In an action by a riparian owner against a water company for an unreasonable diversion of water from a lake, the measure of damages is the difference in the rental value of the property injured.

From the Porter Circuit Court.   *Affirmed.*

*A. D. Bartholomew* and *A. L. Jones,* for appellant.

*E. D. Crumpacker, Grant Crumpacker* and *William Johnston,* for appellee.

BLACK, J.—In this action the appellee recovered a judgment for damages against the appellant for alleged wrongful diversion of the water of a small lake known as Flint Lake, in Porter county.

The facts upon which the material questions to be decided depend may be briefly stated, in substance, as follows:

At the commencement of the action, in December,

1894, the appellee was, and since June, 1890, had been, the owner in fee simple and in possession of a tract of land on which, in part, and running to within 500 feet of the north line thereof, said lake is situated, being a clear water lake, a natural, permanent body of water, covering about one hundred and sixty acres. Said lake is connected by a channel with Long Lake, a smaller body of clear water, and had an outlet through which, formerly, the surplus water flowed off. In 1885, said real estate was owned in fee simple and in possession of Joseph, James, Alvah and John Leonard. In 1887, said Joseph, James and Alvah Leonard conveyed their title and interest in said land to said John Leonard, who then took possession and occupied the land till June, 1890, when he conveyed the land in fee simple to the appellee, who, prior to that time, had no property or interest in said land and did not own any land bordering on or connected with Flint Lake.

In February, 1885, the City of Valparaiso, which is about three miles south of Flint Lake, by ordinance, authorized the construction and maintenance of a system of water works to supply said city and its inhabitants with water, to be obtained from said Flint Lake, and granted to George P. Smith, Micaiah Walker and Don. A. Salyer, and their successors and assigns, the right to lay pipes along and through the streets and public grounds of said city, build and maintain a system of water-works and supply the city with water for fifty years; said water-works machinery and pipes to have a capacity of one million gallons of water for every twenty-four hours, such capacity to be increased as the growth and needs of the city might require.

Afterward, the appellant was incorporated under the laws of this State, as a company, for the purpose of

constructing, maintaining and operating said system of water-works; and the rights and privileges so granted were assigned to the appellant. Thereupon, the appellant constructed said system and bought a tract of land bordering on Flint Lake and built thereon pumping works at the east side of the lake, nearly one-half mile from appellee's said land, and laid twelve-inch water pipes from the lake to the city.

On the 1st of January, 1886, the appellant commenced to pump water from the lake and to supply the city and its people with water under said ordinance, and continued so to do to the commencement of this action. At the time when it so began to pump water at its said water-works, said land, which was on the north side of the lake, and then owned by the Leonards, was wild and uncultivated and covered with timber and was used for grazing and stock purposes only. The appellee purchased the land for the purpose of making it a popular summer resort and erected structures and made improvements upon it for such purpose, and so used it, and the business so carried on by him there became and was very profitable to him. For the last two years before the commencement of this action, and, especially, for the last preceding year, the appellant had pumped the water out of the lake, without any leave or license from the appellee, in such quantity that it had caused the water to be lowered so that it disappeared from the appellee's wide, sandy, sloping beach, and receded to deep water beyond the muck line and rendered the appellee's land less valuable for the purpose for which he so used it.

When the appellee purchased said land, the appellant's works had been so in operation a number of years, of which the appellee had knowledge. While the Leonards owned the land they resided in Valpa-

raiso and had their dwellings there connected with said water-works, and used the water so supplied.

It appears that the supply of water from said lake was sufficient to meet all the demands upon it, made by the operation of appellant's water-works, without perceptible and material diminution of the height of the water at its natural stage until after the appellee's purchase and improvement of said land; but, thereafter the pumping of the water, together with the dryness of the seasons, caused the level of the lake to fall perceptibly and considerably, and the pumping caused it to fall much lower than it was caused to fall by the dryness of the season. It appeared that the use of the water by the appellant had, of itself, no material and sensible effect upon the level of the water until within three years before the commencement of the action.

The complaint demanded damages in a sum stated, and also prayed for an injunction; but the court treated the cause, and caused it to proceed upon the theory that it was an action at law, for damages alone; and upon trial by jury a verdict for the appellee for damages in the sum of $150.00 was returned. The theory upon which the case proceeded in the court below follows it to this court.

It is contended on behalf of the appellant, that, the water-works plant being a permanent, useful, necessary and authorized improvement for the purpose of supplying the city with water, and there not being any charge of negligence in the construction or use thereof, it could not be regarded as a nuisance, and the appellee, if the proper person, could recover damages past, present, and prospective; but that there could be but one action for damages in such case, in which the measure of damages should be the difference between the market value of the land before and

after the injury; that the theory upon which the cause was tried, being that the appellee could recover only such damages as had accrued at the commencement of the action, was wrong, and that the measure of damages adopted by the trial court, in admitting evidence and in instructing the jury, being the difference in the rental value of the appellee's premises for the two years preceding the commencement of the action, caused by the diversion of the water of the lake by the appellant, was erroneous.

It is also contended by the learned counsel for the appellant, that the appellee is not the party injured by the infringement of riparian rights; that the cause of action accrued at the time when the appellant erected its water-works and commenced to pump water from the lake; that all the damages that would accrue could have been ascertained at such time; that the persons then owning the land were the ones who were damaged and the proper persons to bring the action for damages, and the appellee, having purchased after the injury had been done, with full notice, had no cause of action; and that if any cause of action ever did exist, it was barred by the statute of limitations, as not having accrued within six years before the commencement of the action.

Each riparian proprietor is entitled to a reasonable use of water for purposes not domestic. The question whether the quantity which he is diverting is reasonable is not to be determined, in a case like this, by the requirements of his business, but rather by determining whether his use is reasonable and apportionate with reference to the quantity of water usually in the stream or body of water, and whether the complaining riparian owner is substantially damaged by being deprived of his reasonable use. If the business require and use more water than can be permanently

diverted without injury to the right of another riparian proprietor, he has a cause of action. The necessities of one proprietor's business cannot be taken as the standard of another's rights in the water which both have a right to use to a reasonable extent.

In determining the use that may be made of water by a riparian owner, reference must be had, therefore, to the quantity of water in the stream or lake. If there is not more than is necessary to supply the primary, or ordinary wants for domestic purposes, no one can use the water for any secondary, or extraordinary, purposes.

If the company owning water-works, lawfully constructed, operates them in an unreasonable manner, it will be liable for the damages resulting from such unreasonable use.

The diversion of water by such a company is an extraordinary use, which can only be exercised reasonably and with proper regard for the rights of other proprietors. If it does no perceptible damage to other riparian owners, no substantial damages can be recovered; but if by an unreasonable use others are deprived of the reasonable use, an action will lie for such damages.

The use by the upper proprietor must be reasonable, *Dilling* v. *Murray*, 6 Ind. 324; and the lower proprietor is entitled to the natural flow, without diminution to his injury. *Mitchell* v. *Parks*, 26 Ind. 354.

A riparian proprietor has not the right to divert the stream permanently from its natural course, and thus deprive others of their rights therein; and the purpose for which the water diverted may be used (as, to supply a neighboring town with water) makes no difference as to the force and effect of this rule. *Rigney* v. *Tacoma Light & Water Co.*, 9 Wash. 576, 26 L. R. A. 425, 38 Pac. 147.

In that case it is stated that the legal remedy of the party injured by the diversion would be confined to past injuries.

In Gould on Waters, section 214, it is said, that "by the weight of authority, neither an upper or lower proprietor can maintain an action for the diversion; the raising or the detention of water by a neighbor upon the stream, which, being reasonable in mode and degree, is not the cause of actual perceptible damage. Under this rule, as no right of action accrues until injury is inflicted, no prescription begins to run until that time."

It does not appear that there had been an unreasonable use prior to the purchase and improvement of the land by the appellee.

The parties each owned land bordering on the lake. The appellant diverted the water for the purpose of supplying the city by means of water-works, the diversion resulting in a sensible diminution of the water opposite the land of the appellee in dry seasons, so that thereby the appellee was specially and materially injured in the use, as a popular summer resort, of his property so bordering on the lake, at certain periods, prior to the commencement of the action.

The right of the appellant to use the water for the purpose for which it is used by it is not questioned; but damages were sought and recovered for such an excessive use that the appellee at certain times was deprived thereby of the reasonable use to which he was entitled in the conduct of a legitimate business carried on by him upon his premises.

The action is not one brought to vindicate a legal right, involving facts which would entitle the plaintiff to recover nominal damages only for the disturbance of his mere legal right by a wrongful diversion of water without returning it to the original source

in the lake; but it is one for the recovery of special damages arising from the disturbance of his actual use, the injury not appearing to be necessarily permanent, but being shown to have existed at particular times.

Where the structure maintained by the defendant, by the use of which the nuisance is created, is of a permanent character, but the nuisance itself is not of a permanent character, and the use in question may or may not be injurious, the rule that but one action will lie in which the plaintiff may recover all damages, past and prospective, does not apply, but the recovery will be for the damage only which has accrued to the date of the commencement of the action.    Gould on Waters, section 416.

In *Miles. v. Wingate*, 6 Ind. 458, a second recovery for the continuance of a nuisance, occasioned by the defendant's so constructing and maintaining a roof as to cause the water to flow from it against the plaintiff's house, was sustained.

The law will not presume that the thing complained of will cause permanent injury where the character of the injury is not manifest as a necessary result of the existence and use; but it devolves upon a plaintiff to show that the act complained of necessarily causes permanent injury to the value of the property before he can recover in one action more than the damage already accrued.

A distinction is made in the authorities between cases in which the nuisance is of a permanent character, and cases in which, though the structure or act or use which occasions the nuisance is permanent in character, its continuance is not necessarily injurious, but may or may not be so.    In the former class of cases, the damage being original, and such that full compensation may be made at once, the statute of lim-

itations begins to run from the creation of the permanent nuisance; while in the latter class the injury to be compensated in damages is that which has accrued to the commencement of the action, and for which there has not already been a recovery in another action. The nuisance in the latter case is a continuing one, for the continuance of which successive actions will lie, and the statute begins to run from the occurrence of the injury of which complaint is made. *St. Louis, etc., R. W. Co.* v. *Biggs*, 52 Ark. 240, 12 S. W. 331.

For a collection of authorities to this effect, see the note to the last mentioned case in 20 Am. St. 174, 176; see, also, 21 Am. and Eng. Ency. of Law, 214, *et seq.*

In *Woodin* v. *Wentworth*, 57 Mich. 278, 23 N. W. 813, it was held that the measure of damages for such an unreasonable detention or diversion of the natural flow of a stream as prevented a lower owner from getting enough to run his mill, was what the use by the mill was worth during the period of such deprivation. See *Crawford* v. *Parsons*, 63 N. H. 438; *City of Chicago* v. *Huenerbein*, 85 Ill. 594; *Pinney* v. *Berry*, 61 Mo. 359.

In *Thayer* v. *Brooks*, 17 Ohio 489, being an action on the case for nuisance in diverting water from plaintiff's mill by means of a ditch, the court said: "The court instructed the jury that the owner of the mill might recover for the injury sustained by the diminution in value of the mill-site, consequent upon the diversion of the water. This was going too far. Supposing the party liable at all; he was only liable, under any form of declaration, for damages actually sustained prior to the commencement of the suit."

In *King* v. *United States*, 59 Fed. 9, in the United States Circuit Court, District of South Carolina,

where the damages allowed because of injury to land caused by a cross-tide dam were measured by the difference in the market values of the land, although the water of the river was raised and thrown back on the plantation when the dam was built, yet it was held that the six years limitation did not begin to run until the full consequences were ascertained and realized three years later.

In *Colrick* v. *Swinburne*, 105 N. Y. 503, 12 N. E. 427, it was held, that the diversion of the water of a spring from its natural channel by the owner of the land on which the spring was situated, whereby an owner below was deprived of the use of the water for his tannery, was a legal injury for which the injured party was entitled to compensation in damages; that the question whether the use by the owner of the spring was a reasonable exercise of his rights was one of fact for the jury; that the proper rule of damages was the diminished rental value of the tannery premises for the purposes of that business during the period of the diversion; and that the diversion was a continuing injury, the wrong not being referable exclusively to the day when the original wrong was committed, and the action was not barred by the statute of limitations, except as to the damages accrued prior to the statutory period of limitation before the commencement of the action.

The purpose of this action is not to question, and its result does not determine, the right of the appellant to take water from the lake; nor is it the purpose or result of the action to prevent it from taking more than a certain limited quantity of water. The gravamen is the damage caused by the extraordinary diversion of the water in such quantity as to be unreasonable, in consideration of the supply of water in the lake, and the plaintiff's right to a reasonable enjoy-

ment of the lake in the condition in which it would be but for such unreasonable use by the defendant.

In such case, damages actually accrued before action brought can be recovered, and the difference in the rental value is a proper measure thereof; and any further damages must be recovered in a separate action when they actually accrue, and the statute runs from the time the special damage complained of occurred.  Gould on Waters, sections 411, 412.

We find no available error.

Judgment affirmed.

COMSTOCK, C. J., did not take part in this cause.