13110

CONESTEE MILLS v. CITY OF GREENVILLE

(158 S. E., 113)

January, 1930.

*Messrs. W. G. Sirrine* and *B. F. Martin,* for appellants,

*Messrs. B. A. Morgan* and *Haynsworth & Haynsworth*, for respondent,

April 8, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This case has already been before us. 152 S. C., 153, 149 S. E., 595. The action was commenced on the 25th day of August, 1925, and is based upon the pollution of the waters of the Reedy River by the City of Greenville through dis-

charge of raw sewage into that river. In 1891 the Legislature passed an Act (20 Stat. 1370), authorizing the City of Greenville to establish and maintain a sewerage system; and in 1892 or 1893, the city established a system for discharge of its sewage into Reedy River, and continued such discharge up until the commencement of this action, the amount and the injurious effects of the sewage increasing greatly with the rapid growth of the city.

Plaintiff is a domestic corporation engaged in the manufacture of cotton goods, ginning cotton, farming, merchandising, etc., with its principal place of business at the village of Conestee, on the Reedy River about seven miles below the City of Greenville. It owns at and around that point about seven hundred acres of land, which includes a dam with a pond of about one hundred acres, its places of business, and the village in which live its three hundred employees and their families. This land was owned by Reedy River Manufacturing Company from 1892 to 1909, when it was purchased by the plaintiff, the dam and pond having been maintained by its predecessors in title for many years prior thereto.

The amended complaint alleges, *inter alia,* that by reason of the discharge of the untreated sewage into the river the water has become putrid and the air contaminated; that the sewage is deposited along the banks of the pond and spreads over the entire area thereof on plaintiff's land; that the fish in the pond have been killed; that the odors and vapors from the river have become so foul and offensive as to cause the most unwholesome conditions and the greatest annoyance and discomfort; that defendant's method of disposing of sewage is antiquated and dangerous, and that it has negligently and willfully failed and refused to properly treat and purify the sewage with adequate modern septic tanks, whereby the noxious and poisonous qualities may be eliminated or greatly reduced; that these acts of the defendant were and are grossly negligent, creating a nuisance by which plaintiff

has been deprived of the use of the water in pure and uncontaminated condition, its real estate has been damaged, and its property rights have been otherwise injured. Damages in the sum of $100,000 are sought.

As defenses the City set up, *inter alia:* Legislative authorization for the system; prescription; that plaintiff acquired the land in question burdened with the pollution; and the statute of limitations.

On January 22, 1930, Judge W. H. Townsend passed an order transferring the case to Calendar 2 and referring it to the Master to take testimony and report the same, "except as to the amount of compensation, if any, due to plaintiff for taking of property mentioned in the complaint, such issue being reserved for further consideration." Testimony was taken and reported, and thereupon Judge Townsend, on May 29, 1930, passed a decree (1) holding that by the construction of the sewerage system the defendant became liable to compensate lower riparian proprietors for any resulting injury to their lands; that the system was intended to be permanent and was so treated and used up to the commencement of this action; that injury to the lands occurred as early as 1900, the then owner, Reedy River Manfacturing Company, having at that time a right of action to recover compensation for all damages which would naturally flow from the use of the river as a sewer; and that the "taking" of the property occurred before it was acquired by the plaintiff, which took it as purchaser in its injured condition; and (2) dismissing the complaint on the grounds that, more than twenty years having elapsed before the commencement of the action and since the "taking" of the lands, it must be presumed that compensation was made therefor—in effect, sustaining the defense of prescription; that, the land having been "taken" by the city before its purchase by the plaintiff, the latter cannot recover compensation; and that the action is barred by the statute of limitations. From this order plaintiff appeals.

As to prescription:

No actual physical invasion of plaintiff's property is charged, and the cause of action is, therefore, one for continuing nuisance or tort rather than for continuing trespass. In such case, the injury can be abated by the defendant without entry on plaintiff's land, the gravamen of the complaint is the injury as distinguished from the cause of the injury, and the first cause of action arises when the first injury occurs and not when the cause is created. Consequently, the prescriptive period could not commence to run, in any event, until the first injury occurred.

In *Williams v. Mining Co.*, 85 S. C., 1, 66 S. E., 117, 118, 1057, the Court said: "To acquire an easement by prescription it must have been used in substantially the same way for the full period of 20 years and adversely to the rights of the owner. The time does not begin to run until there is some injury done which would support an action."

And in *McDaniel v. Power Co.*, 95 S. C., 268, 78 S. E., 980, 981, 6 A. L. R., 1321: "It may be that when a dam is first built that it will not injuriously affect land some distance from it, and for a long time there will be no cause for them to complain, but when the pond, made by the dam, fills with mud, sand, trash, and other things, causes overflows and injury to lands, then the parties injured have a cause of action, if the building and maintenance of the dam is the direct and proximate cause of their injury. * * * When the dam in question was erected, the waters from the pond in no manner affected appellant's land. She was at that time in no manner affected, and could not foresee that later she would suffer damage, and for that reason could not demand compensation for she then suffered no injury, and any claim made would have been conjectural and speculative on her part; but when she suffered injury from the erection and operation of the dam in question, then, and not until then, did a cause of action accrue to her, and not until then was she in a position to maintain an action. Any action brought

by her until her rights were injuriously affected, or her rights invaded, would have been premature, and she would have had no status in Court." See, also, *Valparaiso Water Co v. Dickover,* 17 Ind. App., 233, 46 N. E., 591 ; *Sullens v. R. Co.,* 74 Iowa, 659, 38 N. W., 545, 7 Am. St. Rep., 501; *Harvey v. R. Co.,* 129 Iowa, 465, 105 N. W., 958, 3 L. R. A. (N. S.), 973, 113 Am. St. Rep., 483; *Illinois Cent. Co. v. Taylor,* 89 S. W., 121, 28 Ky. Law Rep., 139; *Black v. Hankins,* 6 Ala. App., 512, 60 So., 441; *King v. Tiffany,* 9 Conn., 162; *Thornton v. Turner,* 11 Minn., 336 (Gil. 237) ; *Hocutt v. R. Co.,* 124 N. C., 214, 32 S. E., 681; *Atchison, T. & S. F. R. Co. v. Eldridge,* 41 Okl., 463, 139 P., 254; *Sanders v. Miller,* 52 Tex. Civ. App., 372, 113 S. W., 996; *Middelkamp v. Bessemer Irrigating Co.,* 46 Colo., 102, 103 P., 280, 23 L. R. A. (N. S.), 795; *Daneri v. R. Co.,* 122 Cal., 507, 55 P., 243; *Norfolk & W. R. Co. v. Allen,* 118 Va., 428, 87 S. E., 558, 559; and numerous other cases.

In the *Allen case, supra,* the Court said :

"It is well settled that, when a permanent structure is unlawful in and of itself, irrespective of any damages which flow from it, a cause of action accrues at once upon the erection of the unlawful structure, and the plaintiff may recover once for all; but when a structure is lawful, as when it is erected on the defendant's own premises [and we interpolate, as when it is erected by authority of law], and is not *per se* injurious to the plaintiff, then the plaintiff's cause of action arises not from the erection of the structure, but only for such injury as may result from the use of the structure. In other words, a thing which is lawful is not actionable until the plaintiff has suffered injury on account of it."

In the case at bar, the trial Judge held that the injury to the land occurred as early as 1900, relying for such holding on the testimony of defendant's witness, W. E. Beattie, who testified that while he was

president of Reedy River Manufacturing Company—from 1899 to 1905—he detected some odor at the wheel where the water was being churned over and over by the revolution of the vanes, but that it was not particularly offensive and not detrimental to health and did not affect either the rental or the actual value of the property. We do not think this testimony shows any injury which would have supported an action for damages at that time. Nor do we find any testimony whatever which would support a finding that any actionable injury occurred at any time prior to twenty years before this suit was commenced. Accordingly, even if it should be conceded that such a prescriptive right as is here claimed could be acquired by operation of law, no such right has actually been acquired in this case.

As to whether plaintiff is precluded from recovery on account of the fact that it purchased the land subsequently to the installation of the sewerage system:

Respondent contends that the original emptying of the raw sewage into the river was a pollution and constituted an immediate "taking"; and that plaintiff purchased the land burdened with the injury from such discharge, and therefore cannot maintain this action, the right of recovery being in Reedy River Manufacturing Company, which owned the land at the time of such original "taking." We have already held that no right of action accrued to any one till the first injury occurred. It follows that, if no injury occurred prior to plaintiff's purchase of the land, this defense would necessarily fall; if, however, there was such injury—which we assume for present purposes, giving the respondent the benefit of the assumption—then the determination of the question whether plaintiff can recover for injuries occurring after such purchase depends upon whether, under the circumstances of the case (1) there is only one right of action for all injuries inflicted, such right accruing at the time the first injury occurred, or whether (2) there is a right to successive actions for successive injuries—in

the former case plaintiff could not maintain this action as it would have purchased the land burdened with the injury, while in the latter case it would clearly have a right to recover·for injuries it suffered after purchasing the land. And by the better rule, the determination of the question of one right or successive rights in turn depends chiefly upon whether the cause of injury is permanent or temporary.

The distinction is well made in *Harmon v. R. Co.,* 87 Tenn., 614, 11 S. W., 703, 704: "There is a broad distinction between those injuries occasioned by causes permanent in their character, and which are likely to continue with no right in plaintiff to abate them, and those which arise from nuisances which may be discontinued. In respect to the former, the entire damages, past and prospective, can be estimated, and the cause of action cannot be split up; while as to the latter it is not to be presumed that the wrongs will be continued, and it would be unjust to defendant to allow plaintiff to recover damages estimated upon such an assumption. On the other hand it would be equally wrong to permit defendant to insist upon such a rule of compensation, and thus become vested with a perpetual license to commit a nuisance, to the injury of plaintiff and over his protest."

It should be borne in mind that the cause of the injury is not necessarily permanent because the structure through which it operates is of a permanent nature. Indeed, the physical character of the structure itself may have little or no bearing upon the permanency of the cause of the injury, as to which the principal question, according to the sounder view and as indicated in the case just cited, is whether the nuisance is legally abatable. Without attempting an exhaustive discussion of the subject, it is sufficient for the purposes of this case to say that successive injuries caused by the negligent operation of an enterprise authorized by law give rise to successive rights of action, on the theory that, while the enterprise itself is not abatable, the negligent manner of operating it is illegal and abatable. That the nuisance

here complained of was abatable will hardly be denied, as the record shows that, after the institution of this suit, the City of Greenville installed a huge sewerage system, including a disposal plant for treating the sewage, thereby effecting an actual abatement.

In *Chattanooga v. Dowling,* 101 Tenn., 342, 47 S. W., 700, 701, a case very similar to the case at bar, it was said that: "To hold that for such a nuisance the injured party could have only one action, in which he must recover all his damages, past and prospective, would not only be to assume that the wrongdoer will always persist in his misconduct, but would be, in effect, to give him a license to continue in it. The Courts will do neither." See also, *Ramey v. R. Co.,* 235 Ill., 502, 85 N. E., 639; *Bischof v. Bank,* 75 Neb., 838, 106 N. W., 996, 5 L. R. A. (N. S.), 486.

The action in the instant case is grounded, not upon the construction of the sewerage system, which was authorized by act of the Legislature, but upon the negligence of defendant in the operation of that system—for which a cause of action clearly lies. *Wallace v. Railway Co.,* 34 S. C., 62, 12 S. E., 815; *Belton v. Power Co.,* 123 S. C., 291, 115 S. E., 587. It follows, therefore, that successive injuries arising from the negligent operation of the defendant's sewerage system give right to successive actions, and that the plaintiff can recover for injuries occurring after its purchase of the property in question.

In Joyce on Nuisances at page 389, the writer observes: "Again, the mere fact that a city's sewers are of permanent construction does not render permanent also the nuisance occasioned by them in poisoning the waters of a stream and so injuring stock and pasture, for in such case the city has a right at any time to abate the nuisance by proper means of filtration or otherwise, using such sanitary measures as to render the sewage innocuous."

In *Hollenbeck v. City of Marion,* 116 Iowa, 69, 89 N. W., 210, we find: "Modern scientific research has discovered means of disinfecting and deodorizing sewage, so that it is

practically innocuous. * * * While the system may be said to be permanent, it does not appear that the nuisance created thereby may not at any time be abated by the defendant or by the Court."

In *Vogt v. Grinnell*, 123 Iowa, 332, 98 N. W., 782, 783, the Court said: "The mere fact that the city sewers were of permanent construction did not render the nuisance occasioned by them permanent also, for the municipality had the right at any time to abate it. * * * The nuisance consists not in the construction of the sewers in an illegal manner, nor where the city had no right to place them, but in pouring the filth from them into this stream, instead of destroying it by filtration through beds of sand, and the use of a septic tank, thereby rendering the sewage innocuous. Indeed, this is precisely what the city did when threatened with a suit. A temporary excavation for filtration was made immediately, and an appropriate tank, adequate for the disposal of all the sewage, to be completed by the 1st of December following, contracted for; thereby demonstrating that the nuisance was not permanent."

And in *Chattanooga v. Dowling, supra:* "But, if any doubt remained as to the rule in cases of this sort in this state, we think it was set at rest in *Nashville v. Comar*, 88 Tenn., 418, 12 S. W., 1027 [7 L. R. A., 465]. In that case the city of Nashville had constructed a sewer along one of its streets, the supposed defect of which seemed to be that it had not capacity sufficient to carry off the storm water flowing into it, so that upon occasions the pressure of accumulated sewage and storm water had been so great as to back or throw the contents of a smaller and tributary sewer of Comar on his premises. On the trial the Circuit Judge told the jury that in such a case the measure of damages was 'the difference in market value of the property before and since the building of the sewer.' This charge of the trial Judge was maintained in argument by the counsel of Comar as correct, upon the suggestion that the sewer was a permanent improvement, and whatever damage it occasioned was

of a permanent character; and it was therefore insisted that for this reason he could only bring one action, rather than successive actions, and must recover damages once for all. This view was rejected by this Court, as being based upon 'the assumption that the premises of Comar will for all time to come be subjected to the same disgusting invasions of sewage as have heretofore occurred.' Continuing, this Court said: "The complaint is not that the city has been guilty of any misconduct in erecting a sewer where this has been constructed, but that its servants have so unskillfully built it that upon the occurrence of unusual conditions it discharges its contents upon the premises of defendant in error. Now, upon what authority is it to be assumed that the negligence or unskillfulness of the servants of the city in the construction of this sewer will not be remedied?' After a careful examination of the cases, and a repudiation of the measure of damages adopted by the trial Judge, that opinion announces 'that the true rule deducible from the authorities is that the law will not presume the continuance of wrong, nor allow a license to continue a wrong, when the cause of the injury is of such a nature as to be abatable either by the expenditure of labor or money, and that, where the cause of the injury is one not presumed to continue, that the damages recoverable from the wrongdoer are only such as have accrued before action brought, and that successive actions may be brought for the subsequent continuance of the wrong or nuisance.' The principle here so distinctly stated disposes of the contention of complainant in the case at bar; for the insistence of Dowling is not that the city of Chattanooga had no right to erect this sewer, nor that it is not expensively and permanently done, as far as it has gone, but rather that the sewer has been negligently and unskillfully stopped at its present point of termination, so that the necessary result is to flood his land with its contents, to his serious detriment."

*Bennett v. City of Marion,* 119 Iowa, 473, 93 N. W., 558, 559, involved a sewer constructed by a city, which dis-

charged sewage into a pool from whence polluted water was discharged into a creek and thence across plaintiff's farm. The Court said: "Recurring now to the main point made by defendant,—that the action is barred by the statute of limitations, because the nuisance is permanent in character, —it will be noticed that, while the system may be said to be permanent (that is, that it was not established for a temporary purpose), yet it also appears that the injury is not beyond repair. Taking judicial notice, as we must, of the well-known advances in sanitary science, it requires no evidence to show that the nuisance can be easily and successfully abated by the use of modern appliances. * * * Defendant relies on *Powers v. City of Council Bluffs*, 45 Iowa, 652, 24 Am. Rep., 792, and other like cases. But in that case, as pointed out in *Drake v. Railway Co.*, 63 Iowa, 302, 19 N. W., 215, 50 Am. Rep., 746, the injury was beyond the city's power of repair. The remedy to be applied there, if any, was the construction of a wall on plaintiff's premises, where defendant had no right to go. Here the remedy could be applied on defendant's own premises, and there can be no doubt, we think, of its duty to abate the nuisance. * * * We reach the conclusion that the nuisance in question was a continuing one, and that plaintiff was entitled to all damages within the statutory period of limitations not theretofore recovered by him, nothwithstanding the fact that the original cause of action was barred, and this for the reasons: First, that two or more Courts have held it to be a continuing nuisance, and one has held it to be temporary and subject to abatement (*Plate v. Railroad Co.*, 37 N. Y., 472) and, second, for the further reason that defendant may remedy and abate the nuisance without going off its own premises to do so."

A closely parallel case is *Platt Brothers v. Waterbury*, 80 Conn., 179, 67 A., 508, 125 Am. St. Rep., 111. In 1884 the city of Waterbury, in pursuance of authority granted by its charter, constructed sewers according to a sewerage

system by which the contents of the sewers were discharged into the river at points about two miles above plaintiff's land. Subsequently the quantities of refuse and filth became so large in proportion to the volume of pure water in the river that the waters of the river were inadequate to properly dilute the sewage, and at times the filth and noxious substances were necessarily carried over and upon plaintiff's land, there creating a nuisance dangerous to health and causing plaintiff pecuniary loss. In an action commenced on April 23, 1891, plaintiff recovered of the city damages for the injuries so caused prior to the commencement of that action and procured an order enjoining the city from depositing sewage into the river above plaintiff's premises after the 1st day of December, 1902. On March 19, 1902, plaintiff brought an action to recover similar damage sustained between April 23, 1891, and March 19, 1902, by reason of similar unlawful acts of the defendant done between those dates, producing a similar nuisance upon plaintiff's premises.

Upon the trial of the second suit defendant took the position that the cause of action stated in the first suit was the same as that set forth in the second, and that the judgment in the former embraced all damage suffered by the plaintiff on account of the second cause of action, including future damages that might accrue because of the continuance of the cause of action; and claimed that the second suit was barred by the recovery in the first, and that, the cause of action on which both suits were founded being the same, it must have accrued prior to the commencement of the first suit, and so the second suit was barred by the statute of limitation. The trial Court overruled these contentions and was upheld by the appellate Court, which said:

"Every day's continuance of the acts causing such injury renders the defendant liable to a suit for injuries so caused. * * * The fact that the defendant's charter authorizes it to construct the sewers in question and to acquire by right of eminent domain so much of the plaintiff's property

as may be necessary for the public use of sewering the city of Waterbury is no defense to the plaintiff's right to recover specific damage caused by nuisance upon the plaintiff's land, when no property of the plaintiff has been condemned for such public use. A judgment for all damage thus caused must cover all damage from the unlawful acts done prior to the commencement of the action in which it is rendered; but additional damage caused by like subsequent unlawful acts may be recovered in another action, and the right to have the amount of such additional damage determined in an action at law cannot, without the plaintiff's consent, be taken away by instituting subsequent proceedings for the condemnation of the plaintiff's property. * * *

"It is settled by the cases above cited, as well as by the decisions of this Court in the prior litigation between these parties * * * that the cause of action upon which the plaintiff recovered in the former action was not the construction of its sewers by the defendant in 1884 for the purpose of discharging sewage into the river. The construction of the sewers was lawful, and caused no damage to the plaintiff, and such construction for the purpose of discharging sewage into the river gave the plaintiff no cause of action. The sewers could be used for that purpose without invasion of the plaintiff's right and without damage to his property; but when the defendant discharged its sewage into the river in such quantities and in such manner that the same was carried undiluted and unpurified to the premises of the plaintiff two miles below, there producing a public nuisance to the plaintiff's special damage, the defendant did not make a lawful use, but a misuse, of its system of sewers. It did an unlawful act, and that unlawful act was a wrongful invasion of the plaintiff's legal right; and each day such unlawful act was repeated the plaintiff suffered a fresh invasion of his legal rights."

In *Blizzard v. Danville*, 175 Pa., 479, 34 A., 846, the borough of Danville began about 1860 to make use of a

natural stream as a part of its general system of drainage, the stream thus becoming an open sewer and being adopted and used as such by the borough authorities. The Court denied that a prescriptive right could arise in the case, pointing out that the negligence of the borough authorities in not keeping the channel open was the basis of the action, and saying: "The right of action by a lot owner grows, not out of the adoption of the stream as a sewer, which was an act wholly within the power of the municipality, but out of its negligence in not keeping the sewer in at least as good condition as it found it. There is therefore no question of prescriptive right in this case. There can be no prescriptive right to neglect so plain a municipal duty. If the borough had entered upon some portion of the plaintiff's lot in the construction of a sewer in 1860, the right of action for that trespass would be at this time effectually barred by the lapse of time. But when a sewer, built, it may be, 100 or more years ago, gets into bad repair, the liability of the municipality for the injury inflicted upon lot owners arises when the injury occurs, and may be sued for within 6 years thereafter. * * * If the borough has simply drained into this stream, and then given no attention to the effect of its action on the stream or on lot holders along its banks, and the stream has been choked, or its channel obstructed, in consequence of the character or quantity of the material drained into it, and injury has resulted to the plaintiff, the negligence of the borough authorities in not removing such obstruction and keeping the channel open is the true ground on which the plaintiff's right to recover must rest."

As appears in *Jones v. Sewer Improvement District et al.,* 119 Ark., 166, 177 S. W., 888, 889, the plaintiff in a case of this kind has one right of action for the damages arising from the proper construction of a sewer and another right of action for any injuries due to negligence in the construction and operation of the sewer. The case is very illumina-

ting as maintaining the right to just such a cause of action as the plaintiff here insists upon. The Court said:

"In the Circuit Court the plaintiffs were allowed * * * to recover damages for the land taken and damaged by the construction of the sewer. The damages allowed in such cases are those which result from a proper construction of a sewer. According to the allegations of the complaint, after the sewer was constructed it was maintained in such a way as to constitute a nuisance. The right to construct sewers and drains implies no right to create a nuisance, public or private. It is the duty of the commissioners of the sewer district to construct the sewer so that it will not become a nuisance to any neighborhood or to any particular inhabitant thereof; and it is the duty of the city, after the sewer has been turned over to it, to avoid the same result by properly maintaining and repairing the sewer after it is constructed. * * *

"The right conferred upon the sewer commissioners to construct the sewer system and to obtain an outlet therefor outside the city limits carried with it the power to condemn lands necessary for the outlet and for the construction of the septic tank and filter beds. In the suit brought in the Circuit Court, the plaintiffs recovered damages for all injuries to their property as were the natural and necessary result of the construction of the sewer system. While it was lawful to construct the sewer system, and the plaintiffs have received compensation for the injury to their property incident to the construction thereof, it by no means follows that either the city authorities or the sewer commissioners have the right to act in excess of the powers conferred upon them by law. In short, it was the duty of the sewer commissioners to use due care in the construction of the sewer system, and the same duty devolved upon the city authorities in the operation and maintenance thereof.

"The record shows that it was practicable at a reasonable cost, as part of the construction of the sewer system, to

chemically treat the sewage in the septic tank so that the solid matter was reduced to a liquid form, and the noxious and harmful odors would to a great extent be eliminated. It was the duty of the sewer commissioners to adopt such a method in the construction of the sewer system, and it was likewise the duty of the city authorities to use such a method in the maintenance of the system."

In Joyce on Nuisances, par. 284, p. 373, it is said: "Where municipal, *quasi*-municipal and public bodies generally proceed to exercise, or do exercise their powers in constructing and maintaining great public works of a sanitary nature, such as a sewerage system, and the question of the extent of or limitations upon their powers has come before the Courts, these powers and the rights of the public and of private individuals in connection therewith have occasioned much discussion. But notwithstanding certain decisions not in harmony herewith, it may be stated that even though a municipality or other body has power to construct and maintain a system of sewers and although the work is one of great public benefit and necessity, nevertheless, such public body is not justified in exercising its powers in such a manner as to create by a disposal of its sewage a private nuisance without making compensation for the injury inflicted or being responsible in damages therefor or liable to equitable restraint in a proper case, nor can these public bodies exercise their powers in such a manner as to create a public nuisance for the grant presumes a lawful exercise of the power conferred and the authority to create a nuisance will not be inferred."

The cases cited by respondent to support its contention that the plaintiff, as a subsequent purchaser, cannot maintain this action, including *Carroll v. Davis,* 128 S. C., 40, 121 S. E., 601; *Bridges v. Southern Railway,* 86 S. C., 267, 68 S. E., 551, Ann. Cas., 1921-A. 1056; *Cayce Land Co. v. Southern Railway Co.,* 111 S. C., 115, 96 S. E., 725, are not in point, as the causes of action in those cases are of a different nature from that in the case at bar.

As to the statute of limitations:

The question of the applicability and effect of the ▮▮ statute of limitations (Code Civ. Proc., 1922, § 331, subsec. 3) upon the present case is disposed of by what we have already said. In *May v. George,* 53 Ind. App., 259, 101 N. E., 393, 394, the rule is well stated to be that: "If a nuisance is of a character so permanent that it may be fairly said that the entire damage accrues in the first instance, the statute of limitations begins to run from that time; but, if the nuisance may be said to continue from day to day and create a fresh injury each day, there may still be a right of action for the injuries created within the last six years, though the original right of action has been lost."

Plaintiff's right to recovery is, of course, limited to the statutory period of six years next immediately preceding the commencement of the suit. It would be entitled also to bring successive actions for any injuries occurring subsequently to that time; but, presuming that the cause of the injury has been removed by the disposal plant installed by the city, and that no injuries have accrued since such installation, plaintiff may properly be allowed, if it should so desire, to file a supplemental complaint as to any injuries it may have suffered since the commencement of this action, so as to avoid the necessity of another and separate suit. See *Vandalia R. Co. v. Yeager,* 60 Ind. App., 118, 110 N. E., 230.

The judgment of the Circuit Court is reversed, and the case remanded for trial.

Mr. Chief Justice Blease and Messrs. Justices Cothran and Carter concur.