## In re Sandy Lake.

SHULL, Deputy Attorney General, July 13, 1931.—You ask to be advised whether it is the duty of the Water and Power Resources Board to make investigations, conduct hearings, and determine, under the Act of June 25, 1913, P. L. 555, to what extent Sandy Lake has been lowered and who are the parties responsible therefor, so that suit may be brought to have the lake restored to its former level.

In the recital of the facts concerning this lake, you inform us that it covers about 150 acres in Mercer County, and that the records of the Department of Internal Affairs show that title to the lake passed from the Commonwealth to private individuals under a warrant issued in 1794. You say that it appears that the lake has been lowered about two and one-half feet as the result of excavations at its outlet made by the Stoneboro Park Association, which owns a bathhouse and operates a bathing beach along the lake.

We find from the "Water Resources Inventory Report," Part IV, Gazetteer of Lakes and Homes, 1917, that ownership is private and corporate and not limited to the shore line; that Lakeside Park Company is the largest owner; that the drainage area of the lake is 4.5 square miles; that the inlets to the lake consist of several small streams fed by springs, and its outlet is a stream flowing approximately one mile through marshlands to its confluence with Sandy Creek.

This small inland body of water, not being navigable, would be classified under water divisions as private water in contradiction to public waters, such as the Great Lakes, which are under the jurisdiction generally of the Federal Government. It being a private lake, the owners of the bed of the lake and of land bordering it have the same rights as riparian proprietors on a watercourse, including the right to make a reasonable use of the water for domestic, agricultural and mechanical purposes: Turner v. James Canal Co., 155 Cal. 82, 99 Pac. 520, 22 L. R. A. (N. S.) 401.

But no one may appropriate or divert the entire body of water or make such an excessive use of it as to deprive others of their right to a reasonable participation in its benefits: Valparaiso City Water Co. v. Dickover, 17 Ind. App. 233, 46 N. E. 591; Syracuse v. Stacey, 169 N. Y. 231.

". . . the use of water, flowing in its natural channel, like the use of heat, light, or air, has been held . . . to be common by the law of nature, and not merely public, . . . :" Mayor v. Commissioners of Spring Garden, 7 Pa. 348, 363.

". . . There can be no such thing as ownership in flowing water; the riparian owner may use it as it flows; . . . but so long as it flows it is as free to all as the light and the air. . . :" Appeal of Frank Haupt et al., 125 Pa. 211, 224.

Therefore, if any riparian owner has exceeded his rights in respect to the waters of the lake, any individual or corporation injuriously affected may seek injunctive relief, as well as proceed for the recovery of damages.

But what are the powers and duties vested in the Water and Power Resources Board? Under The Administrative Code of April 9, 1929, P. L. 177, this board has all the powers and duties of the former Water Supply Commission. These powers and duties, in so far as they relate to your present inquiry, are found in the Act of June 25, 1913, P. L. 555. That act contains the following provisions:

"Section 2. . . . after the passage of this act, it shall be unlawful for any person or persons, . . '. in any manner to change or diminish the course, current, or cross section of any stream or body of water, wholly or partly within . . . this Commonwealth, without the consent or permit of the Water Supply Commission . . . in writing, previously obtained, upon written application to said commission therefor."

"Section 4. . . . It shall be unlawful to . . . begin . . . any change or addition aforesaid, except in accordance with the terms, conditions, regulations, and restrictions of such consent or permit, . . ."

"Section 7. Any person . . . that shall do or cause to be done; or that shall fail, neglect or refuse to do, or cause to be done, any act or thing contrary to the provisions of this act; or that shall violate, or fail to comply with, any order of the commission, . . . or that shall violate any of the provisions of this act, shall be guilty of a misdemeanor; . . ."

The subsequent provisions of the act relate to enforcing compliance with and restraint of violations of the act by proceedings in equity.

The Act of 1913 is limited in its application to bodies of water having a drainage area greater than one-half square mile. Since the drainage area of the lake now under consideration is in excess of one-half square mile, supervision of the lake, together with its inlets and outlet, is within the jurisdiction of the Water and Power Resources Board. Therefore, before a change that would in any manner diminish the course, current or cross section of the stream or body of water may legally be made, a permit must be procured. The person lowering the stream without such a permit would be guilty of a misdemeanor, and on conviction may be sentenced, under section seven, to pay a fine of not more than $1000, or to undergo imprisonment not exceeding one year.

The act also authorizes the courts of common pleas, on the application of the commission, to restrain violations of the act.

Therefore, you are advised that your board may institute prosecutions against the person who lowered the lake without having received a permit. The board may also proceed to obtain an injunction against the continued violation of the act. Of course, you may make such investigations as may be necessary in connection with such litigation, if the information at hand is inadequate.

From C. P. Addams, Harrisburg, Pa.